

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00177-CV

ROBERT GENE CUNNINGHAM, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF PATRICIA MAUDINE CUNNINGHAM, DECEASED

APPELLANT

V.

ZURICH AMERICAN INSURANCE COMPANY, ASSURANCE COMPANY OF AMERICA, AND TEXAS MEDICAL LIABILITY INSURANCE UNDERWRITING ASSOCIATION

APPELLEES

----------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

This appeal arises from a breach of contract claim against the insurance carriers for two defendants in a medical malpractice case. Appellant Robert Gene Cunningham, Individually and as Representative of the Estate of Patricia

Maudine Cunningham, Deceased, (Cunningham) appeals from the trial court's order denying his motion for summary judgment and granting summary judgment for Appellees Zurich American Insurance Company, its affiliated company Assurance Company of America (collectively Zurich), and Texas Medical Liability Insurance Underwriting Association (also referred to as the Joint Underwriting Association) (JUA). Because we hold the trial court did not err by granting summary judgment for Zurich and JUA, we affirm.

## I. Facts and Procedural History

In a suit brought by Cunningham against Dr. Noble Ezukanma, Dr. Ladi Haroona, their employer HealthFirst Medical Group, P.A., and others for medical malpractice, the trial court rendered judgment against Ezukanma and HealthFirst, jointly and severally, in the amount of $1,041,944.80. The trial court rendered a take-nothing judgment on Cunningham's claim against Haroona. Ezukanma and HealthFirst appealed the judgment against them, and Cunningham appealed the take-nothing judgment for Haroona. JUA, the malpractice insurance carrier for Ezukanma, deposited policy proceeds in the amount of $236,115.66 into the registry of the court on Ezukanma's behalf in lieu of a supersedeas bond.

The trial court ordered the parties to attend post-judgment mediation, and before, during, and after mediation and while the case was pending on appeal, Cunningham, Ezukanma, and HealthFirst engaged in negotiations for a possible settlement. JUA and Zurich, the insurance carrier for HealthFirst, were also involved in the settlement negotiations. Zurich was represented by Laura

2

Grabouski. Stephen Johnson represented Haroona, Mike Sheehan represented HealthFirst, Kevin Carey represented Ezukanma, and John Wilson represented JUA. The parties would later dispute whether Carey also represented JUA.

Cunningham's attorney, Katherine Youngblood, made a "take-it-or-leave-it" demand to Ezukanma and HealthFirst. The demand, which Youngblood said would expire at noon on May 23, 2008, was for $650,000 from Zurich plus the funds that JUA had deposited into the trial court's registry. In exchange, Cunningham would sign a release of at least some of his claims; the parties later disagreed about whether they had intended for Haroona to be included in the release.

On the date of the deadline, Grabouski sent Youngblood an email at 10:29 a.m. that stated:

> This confirms that you have made a "take or leave it" demand to HealthFirst and [Ezukanma] and their carriers . . . for payment of $650,000 plus the amount . . . currently in the court's registry, in exchange for a complete release of those parties and dismissal of all proceedings against such parties; and further that this demand expires at noon today, Friday, May 23, 2008. Based on that understanding, Zurich, on behalf of HealthFirst and [Ezukanma], agrees to pay [Cunningham] $650,000, provided that such amount is combined with payment of [Ezukanma's] JUA policy (and upon any necessary consents to same), in exchange for [Cunningham's] complete release of the above parties and dismissal of the proceedings. Zurich's agreement to do so is further conditioned on execution of a satisfactory Rule 11 agreement by counsel . . . and a subsequent execution of a more formal agreement and release by the parties.

In the days following Grabouski's email, Youngblood, Grabouski, and Carey exchanged a series of emails and letters that showed a disagreement over

whether Haroona was intended to be included in the release. On May 27, 2008, Grabouski sent Youngblood a proposed Rule 11 agreement that, in addition to the terms mentioned in her email, included the release of Cunningham's claims against Haroona. Youngblood struck out the portion regarding Haroona, signed the agreement, and returned it. She later prepared an "Agreement for Release of Judgment" that Zurich and JUA declined to sign. After Youngblood and Grabouski exchanged emails and letters disputing whether Haroona was to be included and whether they had a binding agreement, Carey notified Youngblood that he was "convinced that there has not been a 'meeting of the minds' relevant to any settlement" in the case and that he would not sign any agreed order abating or dismissing the appeal until the parties had "a valid, fully executed [R]ule 11 agreement on file with the [trial court] resolving all claims with indemnification to the benefit of [Ezukanma]."

Cunningham filed suit against Zurich and JUA for breach of contract in Dallas County. In October 2008, on Zurich and JUA's motion, the Dallas trial court transferred that suit to Tarrant County under civil practice and remedies code section 15.002(b).[1] This breach of contract action is the underlying suit in the appeal now before us.

While the breach of contract action was pending, Cunningham, Ezukanma, and HealthFirst entered into a confidential settlement agreement regarding the

---

[1]Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b) (West 2002).

judgment in the malpractice suit. Accordingly, in December 2008, Ezukanma, HealthFirst, and Cunningham filed an agreed motion for partial nonsuit in the breach of contract suit, seeking dismissal of all claims "seeking enforcement and collection of the [j]udgment which have been or which could have been asserted by [Cunningham] against any other party to this suit," including a claim seeking the full amount of the judgment from the malpractice action. The motion expressly states that the parties did not address Cunningham's breach of contract claim based on the alleged settlement agreement. The trial court signed an order of partial nonsuit in accordance with the motion. Cunningham, Ezukanma, and HealthFirst also filed in this court an agreed motion to dismiss Ezukanma's and HealthFirst's appeals in the malpractice suit, which this court granted.

In the breach of contract action, Zurich, JUA, and Cunningham all filed motions for summary judgment. Zurich's motion for summary judgment asserted, among other grounds, that Grabouski's May 23, 2008 email was a mere offer that was withdrawn prior to acceptance; that the email did not meet the requirements of Rule 11 of the rules of civil procedure and was therefore not an enforceable settlement agreement; and that the email was not signed, prohibiting enforcement under Rule 11.

JUA's motion for summary judgment adopted by reference Zurich's motion and also asserted that JUA never entered into a valid contract with Cunningham because the email from Grabouski did not bind JUA; that there was no offer,

5

acceptance, or meeting of the minds between Cunningham and JUA; and that the email did not satisfy Rule 11.

Cunningham argued in his motion that the email constituted an acceptance of the material terms necessary to constitute a valid contract. The trial court denied Cunningham's motion and granted Zurich's and JUA's motions. Cunningham now appeals.

## II. Standard of Review for Summary Judgment

We review a summary judgment de novo.[2] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[3] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[4] A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[5] A defendant who conclusively

---

[2]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[3]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[4]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[5]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[6]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[7] The reviewing court should render the judgment that the trial court should have rendered.[8]

### III. Analysis

### A. Did the trial court err by granting summary judgment for Zurich?

In his first issue, Cunningham argues that the trial court erred by granting summary judgment for Zurich. When, as here, the trial court grants a summary judgment but does not specify the ground relied on for its ruling, we must affirm the judgment if any of the theories advanced by the movant have merit.[9] In its summary judgment motion, Zurich argued that it had never entered into a valid contract with Cunningham, that Rule 11 prohibited enforcement of any purported settlement agreement, and that the email was not an enforceable Rule 11

---

[6]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

[7]*Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009).

[8]*Mann Frankfort*, 289 S.W.3d at 848.

[9]*Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

7

agreement.  In its motion, Zurich did not specify whether it sought traditional or no-evidence summary judgment and did not reference which subsection of the summary judgment rule it relied on.  It did, however, set out the standard for granting traditional summary judgment.  Zurich therefore appeared to move for traditional summary judgment, not no-evidence summary judgment.  Zurich therefore took upon itself the burden of proving its summary judgment grounds as a matter of law.[10]  Accordingly, we look at the evidence produced by the parties to determine if Zurich met its burden of establishing as a matter of law that no contract existed.[11]

Cunningham argues that the trial court erred if it granted summary judgment based on Rule 11.  He contends that Rule 11 does not apply because this agreement was made after the trial court lost plenary power.

Rule 11 of the Texas Rules of Civil Procedure states, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."[12]  By its own terms, the rule applies only to pending suits.[13]

---

[10]*See* Tex. R. Civ. P. 166a(c).

[11]*See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) ("When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence.").

[12]Tex. R. Civ. P. 11.

Cunningham argues that Rule 11 does not apply because this agreement was made after the trial court's plenary power had expired and while the cause was on appeal, and therefore the suit was not "pending."

In *Kennedy v. Hyde*, the Supreme Court of Texas held that Rule 11 is applicable to settlement agreements.[14] The court did not address what the word "pending" means in the rule and did not reach the question of whether the rule applies to suits in which the trial court's plenary power has ended but the cause remains on appeal. Nevertheless, we may apply the court's reasoning in that case, which noted the policy behind the rule, as expressed by the court in 1857 in *Birdwell v. Cox*:

> Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that *all agreements of counsel respecting their causes shall be in writing*, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety. The rule is a salutary one, and ought to be adhered to whenever counsel disagree as to what has transpired between them.[15]

---

[13]*Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 393 (Tex. 1993).

[14]682 S.W.2d 525, 530 (Tex. 1984).

[15]18 Tex. 535, 537 (1857) (emphasis added).

9

The *Kennedy* court noted "the wisdom of the rule," remarking that "[a]greements of counsel in the course of a judicial proceeding which affect the interests of their clients should not be left to the fallibility of human recollection."[16]

Rule 11 does not specify that it applies only to suits pending only *in the trial court*.[17] A reasonable application of the rationale and policy of *Birdwell* and *Kennedy* dictates that the rule that settlement agreements must be in writing should be applied whenever the cause is pending in the trial court or on appeal and therefore has not been finally determined.

At least one other court of appeals has reached a similar conclusion. In *Coale v. Scott*, the parties' dispute over an easement resulted in a judgment for the Scotts.[18] Years later, the Scotts moved the trial court to enforce the judgment.[19] The trial court granted the motion.[20] The Scotts then filed a motion to enforce a Rule 11 agreement, which had been entered into after the trial

---

[16]*Kennedy*, 682 S.W.2d at 530 (quoting *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex. Comm'n App. 1921, holding approved)).

[17]Tex. R. Civ. P. 11; s*ee, e.g., Dallas Cowboys Football Club, Inc. v. Harris*, 348 S.W.2d 37, 40 (Tex. Civ. App.—Dallas 1961, no writ) (holding that the language in a temporary injunction providing that the injunction shall issue "pending final hearing and determination of this cause" meant that the injunction remained in effect pending final determination on appeal).

[18]331 S.W.3d 829, 830 (Tex. App.—Amarillo 2011, no pet.).

[19]*Id.*

[20]*Id.*

court's original judgment had become final.[21]  On appeal, the Coales argued that the trial court did not have jurisdiction to enforce the Rule 11 agreement.[22]  The Amarillo Court of Appeals held that a trial court's authority to approve a Rule 11 agreement does not depend on whether the trial court has plenary power over the judgment to which the settlement agreement relates.[23]  The court noted that

> since a trial court has the continuing power to enforce its judgments after they become final, . . . common sense tells us that an attempt to have the court enforce its judgment, as was done here, is tantamount to the continuation of an aspect of the underlying suit, *i.e.* the effectuation of what was adjudicated.  So, a settlement agreement, like that at bar, executed while the parties were attempting to sway the trial court to enforce its judgment logically falls within the scope of "any suit pending" for purposes of Rule 11.[24]

Although our sister court's holding determined whether any settlement touching an enforcement proceeding would fall within the phrase "suit pending" as used in Rule 11, a different scenario from this case, it disagrees with Cunningham's assertion that the applicability of Rule 11 depends on whether the trial court has plenary power over the judgment giving rise to the settlement agreement.  In the case before us, the underlying medical malpractice case was on appeal, which means that it had not been finally disposed of.  And unless that judgment was

---

[21]*Id.* at 830–31.

[22]*Id.* at 831.

[23]*Id.*

[24]*Id.* (citations omitted).

reversed on appeal, the trial court continued to have authority to enforce it;[25] whether Cunningham would seek enforcement of that that judgment as rendered was a matter that the parties were attempting to settle.

Cunningham points to *Guidry*[26] in support of his argument that the suit was not pending—and therefore Rule 11 did not apply—because the trial court had rendered final judgment and the case was on appeal. But that case does not support Cunningham's position. In *Guidry*, one party to a settlement agreement filed a motion to enforce the agreement, but the motion was filed in a suit between the other party to the settlement agreement and a third party.[27] The enforcing party was not a party to the suit and did not intervene in the suit.[28] Furthermore, the main target of the enforcing party's motion was an entity that, although a party to the settlement agreement, was not a party to the suit in which the enforcing party filed its motion.[29] Accordingly, the court of appeals determined that the trial court lacked the power to grant the requested relief.[30]

---

[25] *See Kenseth v. Dallas County*, 126 S.W.3d 584, 598 (Tex. App.—Dallas 2004, pet. denied) ("The trial court always has authority to enforce its judgments and to disburse money held in its registry.").

[26] *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[27] *Id.* at 635.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 635–36.

The court of appeals did not hold that a suit that is pending on appeal is not pending for purposes of Rule 11.

As Cunningham points out, an exception to the writing requirement may arise when the parties to an oral agreement do not dispute the existence or the terms of the agreement.[31]  But the parties here disputed both the existence of any final agreement and the terms that had been agreed to by the time of the email.  The exception does not apply.

Cunningham also points out that an agreement that does not conform with Rule 11 may nevertheless be enforced on equitable grounds such as fraud or mistake.[32]  But Cunningham does not point this court to anywhere in the record where he produced evidence raising a fact issue on an equitable ground that would render a nonconforming agreement enforceable.[33]

Cunningham argues in his reply brief that requiring compliance with Rule 11 would give Zurich an unfair advantage because he would be denied payment after releases had been given.  But that is not what happened here.  Grabouski

---

[31] *See Anderson v. Cocheu*, 176 S.W.3d 685, 688–89 (Tex. App.—Dallas 2005, pet. denied); *see also Kennedy*, 682 S.W.2d at 529 (noting that "an undisputed stipulation may be given effect despite literal noncompliance with the rule").

[32] *See Kennedy*, 682 S.W.2d at 529.

[33] *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (analogizing Rule 11's writing requirement to the statute of frauds); *Meyer v. Tex. Nat'l Bank of Commerce of Houston*, 424 S.W.2d 417, 419 (Tex. 1968) (stating that to avoid application of the statute of frauds on equity grounds requires "something more than a mere wrong or breach of contract").

sent the email on which Cunningham relies on May 23, 2008, and within a week, it was apparent that Youngblood and Grabouski disagreed about whether they had a final settlement agreement. Based on his belief that Cunningham, Zurich, and JUA had reached an agreement that Zurich and JUA were refusing to honor, Cunningham filed this action against them for breach of contract; although the record does not reveal when the suit was originally filed, Zurich filed a motion to transfer venue and motion to dismiss on June 30, 2008, indicating that Cunningham filed suit shortly after the dispute over the email arose. Cunningham did not release Ezukanma and HealthFirst until those three parties reached a later settlement agreement that all three parties agree exists, and the terms of which none of the three disputes, which was entered into after Cunningham had already filed the breach of contract suit against JUA and Zurich. Zurich thus did not make false promises or representations about payment in order to gain releases for Ezukanma and HealthFirst, and then, once those releases were obtained, refuse to pay on the ground that the parties did not have a signed agreement. Cunningham does not point out any other unfair advantage that Zurich gained by the application of Rule 11. We therefore cannot say that requiring compliance with Rule 11 resulted in an unfair advantage to Zurich.

Citing *Masi v. Scheel*,[34] Cunningham next contends that Zurich waived the benefit of Rule 11 because it was required to plead Cunningham's noncompliance with Rule 11 in order to rely on that rule but did not do so. Cunningham also argues that he pled that all conditions precedent had been met, Zurich did not plead any unsatisfied conditions precedent, and therefore he did not have to prove that such conditions had been satisfied. We reject both of Cunningham's contentions.

In its second amended answer, which was verified, Zurich denied that the email was a binding agreement and asserted a counterclaim for a declaratory judgment that the email did not form a valid and enforceable contract and that Rule 11 prohibited its enforcement as a settlement agreement. And in its response to Cunningham's motion for summary judgment, Zurich argued that the email was not an enforceable Rule 11 agreement.[35] Thus, unlike the defendant in *Masi*, Zurich denied the existence of a settlement agreement and pointed out the alleged agreement's noncompliance with Rule 11.

---

[34]724 S.W.2d 438, 439 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) ("[W]hether or not the oral agreement itself is denied, the failure to plead the requirements of rule 11 is a waiver of its benefits.").

[35]*See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer *or other response* shall not be considered on appeal as grounds for reversal.") (emphasis added); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) (stating that to defeat summary judgment, "the non-movant must now, in a written answer *or response* to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment") (emphasis added).

Next, Cunningham contends that Rule 11 does not apply to undisputed agreements and that although Zurich disputed the legal effect of the email, it did not dispute the fact or terms of the agreement.[36] But Zurich did dispute the terms of the agreement; since Grabouski sent the proposed Rule 11 agreement to Cunningham, the parties have disputed whether Haroona was supposed to be included in the settlement. And Zurich also denied that the parties had any final agreement at all[37] and contended that the email, if it had any effect, was nothing more than an offer to settle. We therefore disagree with Cunningham's argument.[38] We hold that any settlement agreement between Cunningham and Zurich had to be in writing and signed, as required by Rule 11. We overrule this portion of Cunningham's first issue.

We next determine whether Zurich produced sufficient evidence to establish that no Rule 11 agreement with Cunningham existed, and if it did do so,

---

[36]*See Anderson*, 176 S.W.3d at 689 (stating that when the existence of the agreement and its terms are not disputed, the agreement may be enforced despite its noncompliance with Rule 11).

[37]See, for example, Grabouski's email to Youngblood on May 28, 2008, in which she stated, "If my letters earlier today and yesterday were not clear enough, let me be clear here. You seem to claim that my email of Friday, May 23 forms the basis of a contract. We disagree for the reasons set forth in my correspondence."

[38]*See London Mkt. Cos. v. Schattman*, 811 S.W.2d 550, 552 (Tex. 1991) (stating that once the existence of an agreement between attorneys or parties concerning a pending suit becomes disputed, "it is unenforceable unless it comports with these requirements.").

16

whether Cunningham produced evidence in the trial court sufficient to raise a fact issue about whether he had an agreement with Zurich that satisfied Rule 11.[39]

Zurich pointed out in its summary judgment motion that Cunningham's breach of contract claim as pled was based on oral communications and on Grabouski's email. Zurich then asserted that the email was not a binding and enforceable Rule 11 agreement because it left "material matters open for future adjustment." Zurich also argued that Cunningham had attempted to change the terms of the agreement because when Youngblood signed the proposed Rule 11 agreement sent by Grabouski after the email, she crossed out the inclusion of Haroona in the release.

In her email, however, Grabouski restated the offer made by Cunningham to HealthFirst and Ezukanma and their respective insurance carriers and acknowledged that the offer contained a promise of release by Cunningham in return for the payment of $650,000 from Zurich and money in the court registry from JUA. Grabouski then indicated Zurich's agreement to those terms on behalf of HealthFirst and Ezukanma. She did not mention Haroona at all, either when she confirmed her understanding of the terms of Cunningham's offer or when she accepted those terms for Zurich "on behalf of HealthFirst and [Ezukanma]." Because the email contained an agreement to pay in exchange for release of

---

[39]See Tex. R. Civ. P. 166a(c).

17

liability, it contained the essential terms of a settlement agreement, and Haroona was plainly not included.[40]

But Rule 11 also required a signed writing,[41] and Zurich argued in its summary judgment motion that the email was not enforceable because it was not signed. The fact that the email is an electronic document does not prevent it from being enforceable under Rule 11 because, as Cunningham argues, under the uniform electronic transactions act, a contract may be enforceable despite the use of an electronic record in its formation, and "[i]f a law requires a signature, an electronic signature satisfies the law."[42] By statute, the term "electronic signature" "means an electronic sound, symbol, or process attached to . . . a record and executed or adopted by a person *with the intent* to sign the record."[43] An electronic signature is "attributable to a person if it was the act of the person."[44] In determining whether the signature was "the act of the person,"

---

[40]*See Padilla*, 907 S.W.2d at 460–61 (holding in a case involving a settlement agreement that an agreement to pay in settlement of claims contained all the material terms of the agreement); *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 265–66 (Tex. App.—Fort Worth 1999, no pet.) (holding that a settlement agreement, in which the appellees promised to pay the appellant in exchange for the appellant's promise to release them from liability, contained all the material terms of the agreement).

[41]*See* Tex. R. Civ. P. 11.

[42]Tex. Bus. & Com. Code Ann. § 322.007 (West 2009).

[43]*Id.* § 322.002 (West 2009) (emphasis added).

[44]*Id.* § 322.009(a) (West 2009).

we look to "the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law."[45]  Whether the signature was the act of the person "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."[46]  The uniform electronic transactions act "applies only to transactions between parties each of which has agreed to conduct transactions by electronic means."[47]  As with determining whether a signature was the act of a person, in determining whether the parties agreed to conduct a transaction by electronic means, we consider the context and surrounding circumstances, including the parties' conduct.[48]

With the statutory requirements in mind, we consider whether Grabouski's email to Youngblood includes some marking executed or adopted by Grabouski with the intent to sign the email.  The email does not contain a graphical representation of Grabouski's signature, an "s/" followed by Grabouski's typed name, or any other symbol or mark that unequivocally indicates a signature.[49]

---

[45]*Id.* § 322.009.

[46]*Id.* § 322.009(a).

[47]*Id.* § 322.005(b) (West 2009).

[48]*Id.* § 322.005.

[49]*See, e.g.*, N.D. Tex. R. 11.1 ("An attorney who submits a document for filing by electronic means must place on the document an 's/' and the typed

19

The email does conclude, however, with what is commonly referred to as a "signature block," that is, a block of information beginning with Grabouski's name followed by her contact information.[50]

There is nothing to show that the signature block was typed by Grabouski and not generated automatically by her email client.[51] If Grabouski did personally type the signature block at the bottom of the email, nothing in the email suggests that she did so with the intention that the block be her signature, and Cunningham does not direct us to any other place in the record raising a fact issue about her intention. And no evidence indicates that the parties agreed to conduct the settlement transaction by electronic means. We decline to hold that the mere sending by Grabouski of an email containing a signature block satisfies the signature requirement when no evidence suggests that the information was typed purposefully rather than generated automatically, that Grabouski intended the typing of her name to be her signature, or that the parties had previously

name of the attorney, or a graphical signature, in the space where the attorney's signature would have appeared had the document been submitted on paper.").

[50]*See* Jill Schachner Chanen, Netting Surfers With A "Hula" Hook, ABA J., Sept. 1999, at 78, 79 (describing an email's signature block as a block "detailing the sender's name, address and other information").

[51]*See id.* (noting that most email programs "allow a signature block . . . to be built into every message sent"); *but cf. Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1357, 1362 (Fed. Cir. 2005) (holding, without discussion of intent to sign, that an email ending with a salutation from the sender stating "Best regards Mike Bucher" satisfied the statute of frauds because, under California law, a typed name is sufficient to constitute a signature).

agreed that this action would constitute a signature.[52]  Because there is no other evidence of an electronic signature, the email was not signed, and it therefore does not meet the requirements of Rule 11.

Cunningham argues that the trial court erred by overruling his special exceptions to Zurich's motion for summary judgment.  Cunningham excepted to Zurich's motion as failing to state specific grounds for summary judgment.  But Zurich clearly asserted that it was entitled to judgment as a matter of law because any settlement agreement had to comply with Rule 11 and that the email did not comply with the rule because, among other reasons, it was unsigned.  Because we may affirm the summary judgment on this single ground that Zurich clearly asserted, any error by the trial court in overruling Cunningham's special exceptions was harmless.[53]

We note that in Cunningham's reply brief to Zurich's sur-reply, he appears to argue that the parties later entered into a settlement agreement, thereby satisfying the "more formal agreement" and "satisfactory Rule 11 agreement" conditions in the email.  But those assertions relate to an argument about

[52]*See, e.g.*, 16 Tex. Admin. Code § 402.412 (2009) (Tex. Lottery Comm'n, Signature Requirements) (categorizing an email as including an original signature if the email originates from someone whose personal email address has previously been submitted to the commission and the email includes the sender's name, the associated organization's name, and the address of either the individual or organization on file with the commission).

[53]Tex. R. App. P. 44.1(a); *see Carr*, 776 S.W.2d at 569 (noting that when a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm if any of the summary judgment grounds have merit).

whether any conditions precedent in the email had been satisfied and do not address the point that the email itself was not an enforceable Rule 11 agreement because it was unsigned. Cunningham does not direct this court to any evidence in the record showing that Grabouski signed a written agreement including the terms that Cunningham now seeks to enforce. Accordingly, because the agreement Cunningham seeks to enforce does not comply with the requirements of Rule 11, we hold that the trial court properly granted summary judgment for Zurich, and we overrule the remainder of Cunningham's first issue.

**B.  Did the trial court err by denying summary judgment for Cunningham on his claim against Zurich?**

In Cunningham's second issue, he argues that the trial court erred by denying his motion for summary judgment against Zurich. Because we have held that the trial court did not err by granting summary judgment for Zurich, we overrule this issue.

**C.  Did the trial court err by granting summary judgment for JUA?**

In his third issue, Cunningham argues that the trial court erred by granting summary judgment for JUA.

1. *Whether The Trial Court Should Have Granted Cunningham's Motion for Continuance*

Cunningham first argues under this issue that the trial court should have granted his motion for continuance. He asserts that he did not receive the minimum twenty-one days' notice of JUA's second motion for summary judgment and hearing. He claims that he received notice on March 2, 2009, when

Youngblood's postal worker notified her that she had a package on the front porch of her home, where she also has her office. The package contained JUA's motion and notice of the hearing set for eighteen days later on March 20, 2009. Cunningham filed a motion for continuance based on inadequate notice, which the trial court denied.

In response JUA argues that the package was delivered to Youngblood's house on February 27, 2009. JUA also argues that leaving the documents on her doorstep was a proper method of service, citing O'Connor's Texas Rules in support of this assertion. As JUA's counsel is aware, O'Connor's does not carry the force of law.[54] JUA cites no other authority in support of its assertion that leaving notice of a hearing on someone's front porch constitutes proper service.

However, even if JUA's method of service was insufficient, a holding we do not need to make here, before this court may reverse the summary judgment on such grounds, Cunningham must show on appeal that he was harmed.[55]

---

[54]*Bair Chase Prop. Co., LLC v. S & K Dev. Co.*, 260 S.W.3d 133, 142 n.5 (Tex. App.—Austin 2008, pet. denied) (stating that a treatise is not binding on the court of appeals); *Simplex Elec. Corp. v. Holcomb*, 949 S.W.2d 446, 448 (Tex. App.—Austin 1997, pet. denied) (same).

[55]*See* Tex. R. App. P. 44.1; *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (stating that notice of a hearing on a summary judgment motion is required but is not jurisdictional and holding that the trial court's error in granting a summary judgment motion without notice of the hearing was harmless in that case); *see also Meeks v. Spencer*, No. 02-05-00266-CV, 2006 WL 1174229, at *3 (Tex. App.—Fort Worth May 4, 2006, no pet.) (mem. op.) (holding that the appellant had not shown harm from receiving only twenty-three day's notice of the hearing instead of the twenty-four days required for

Cunningham does not dispute that he received actual notice of the hearing, and he has not shown that he was harmed by receiving only eighteen days' notice instead of twenty-one or by the trial court's failure to grant him a continuance based on receiving less than twenty-one days' notice. We therefore overrule this part of Cunningham's third issue.

2. *Whether The Trial Court Erred by Granting Summary Judgment On The Ground That No Contract With JUA Existed*

As one of its asserted grounds for summary judgment, JUA argued that it had never entered into a valid contract with Cunningham. Like Zurich, JUA did not specify in its motion whether it sought traditional or no-evidence summary judgment and did not reference which subsection of the summary judgment rule it relied on. But because JUA attached evidence to its motion and did not point out specifically which elements of his claim for which Cunningham had no evidence, JUA appeared to move for traditional summary judgment, not no-evidence summary judgment. JUA therefore took upon itself the burden of proving the non-existence of a contract.[56] We thus look at the evidence produced by the parties to determine if JUA met its burden of establishing as a matter of law that no contract existed.[57]

---

service by mail when he had not shown what he could or would have done in the missing twenty-four hours).

[56] *See* Tex. R. Civ. P. 166a.

[57] *See FM Props. Operating Co.*, 22 S.W.3d at 872.

In support of its motion, JUA argued that in Cunningham's petition, the only writing on which he based his contract claim was Grabouski's email and that this email did not satisfy the requirements of Rule 11.

JUA directed the trial court to Youngblood's deposition, in which she stated that the only signed writing that she had with respect to an agreement with JUA was the email. JUA also pointed out the portion of Youngblood's deposition testimony in which she stated that she had not accepted any offer from JUA for Cunningham prior to the email on the ground that she would not accept it without also having an agreement with Zurich, because she "wasn't going to settle for $200,000 a million-dollar judgment." In his response, Cunningham argued that he had entered into a valid oral agreement with JUA through Carey, its negotiating agent, and that this agreement was confirmed via Grabouski's email, which itself was orally confirmed and ratified by Carey.

On appeal, Cunningham argues that JUA did not meet its burden to prove that no contract existed and that the trial court erred if it granted summary judgment on this ground. Cunningham argues that he had an oral agreement with JUA through Carey, that Rule 11 does not apply to prevent its enforcement, and that if Rule 11 does apply, the email satisfies its requirements.

As with his agreement with Zurich, any settlement agreement between Cunningham and JUA had to be in writing and signed, as required by Rule 11. Cunningham argues that JUA waived Rule 11's applicability because it did not plead it and that JUA did not amend its answer to specifically deny

Cunningham's compliance with Rule 11 until after the hearing on Cunningham's summary judgment motion, which Cunningham argues made it untimely. But JUA did argue in its response to Cunningham's summary judgment motion that the email did not satisfy Rule 11.[58] JUA therefore did not waive its argument regarding Rule 11 by failing to plead it.

As to Cunningham's Rule 54 argument,[59] assuming that compliance with Rule 11 is a condition precedent,[60] the question of whether Rule 11 applied and whether the email satisfied the rule was raised and argued by both parties throughout the trial court proceedings. In its original answer, JUA denied that the email on which Cunningham based his claim was signed by JUA. In its subsequent amended answers, JUA specifically denied that it had executed an

---

[58] *See Clear Creek Basin Auth.*, 589 S.W.2d at 679; *see, e.g., Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991) (holding that "an unpleaded affirmative defense may also serve as the basis for a summary judgment when it is raised in the summary judgment motion, and the opposing party does not object to the lack of a rule 94 pleading in either its written response or before the rendition of judgment").

[59] *See* Tex. R. Civ. P. 54.

[60] *See, e.g., J.P. Ryan Enters., Inc. v. Matthaei*, No. 09-06-00237 CV, 2007 WL 1219443, at *5 (Tex. App.—Beaumont Apr. 26, 2007, no pet.) (mem. op.) (holding that the trial court erred by applying Rule 54 so as to relieve the plaintiff of the burden of proving the elements of his cause of action and to prevent the defendant from presenting evidence to challenge the elements); *Love of God Holiness Temple Church v. Union Standard Ins. Co.*, 860 S.W.2d 179, 181 (Tex. App.—Texarkana 1993, writ denied) (holding in suit relating to an insurance contract that because coverage relates to the agreement itself and is not a condition precedent, the plaintiff was not relieved of proving coverage by the defendant's general denial).

agreement with Cunningham and that Cunningham had delivered an executed contract to JUA, but it did not specifically deny that the email was signed by JUA. JUA nevertheless could and did put on evidence about whether the email satisfied Rule 11.[61] In its motion for summary judgment, JUA pointed out that Rule 11 required the agreement to be signed and argued that the email was not signed. Cunningham also continued to argue, both in his summary judgment motion and in his responses to JUA, that Rule 11 did not apply but that, if it did apply, the email satisfied the requirements of the rule. JUA thus did not waive its argument that Rule 11 applied and that the email was unenforceable under that rule. We therefore consider whether JUA proved as a matter of law that it had no enforceable Rule 11 agreement with Cunningham.

With its motion, JUA attached the affidavit of Sally Stewart, a JUA claims manager. In the affidavit, Stewart stated that neither Grabouski nor Carey represented JUA or had the authority to negotiate a settlement for JUA. Cunningham objected in the trial court to Stewart's affidavit on the grounds that Stewart was not timely or properly disclosed as a witness and that the affidavit

---

[61]*See Texas Educ. Agency v. Stamos*, 817 S.W.2d 378, 387 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("[W]hile the state of the pleadings relieved plaintiffs of putting on proof of their exhaustion of administrative remedies as an element of their cause of action, it did not prevent unobjected to evidence on the issue serving as a basis for the trial court's judgment."); *see also Occidental Neb. Fed. Sav. Bank v. E. End Glass Co.*, 773 S.W.2d 687, 688 (Tex. App.—San Antonio 1989, no writ) (holding that even though the bank failed to plead any noncompliance with conditions precedent, the issue was tried by consent when evidence on the issue was admitted without objection).

27

was conclusory and did not show that she had personal knowledge of the facts stated in the affidavit.  The trial court overruled Cunningham's objections.

Cunningham now argues that the trial court erred by overruling his objections to Stewart's affidavit because it is conclusory and not based on personal knowledge.  We agree with Cunningham that the trial court should have excluded Stewart's affidavit on the ground that it was not based on personal knowledge.  In her affidavit, Stewart stated that she is the claim manager for JUA and that she has personal knowledge of the facts stated in her affidavit.  She then states that although Cunningham claims to have a contract with JUA based on Grabouski's email, Grabouski is not JUA's attorney, is not an agent of JUA, and was not given authority by JUA to act on its behalf.  She then states that JUA did not send Grabouski's email and did not approve or ratify it, that JUA did not enter into a contract with Cunningham prior to October 2008, and that JUA had no verbal settlement agreement with Cunningham prior to October 2008.

Nothing in Stewart's affidavit shows a basis for her to have personal knowledge of whether JUA has hired a particular attorney, whether JUA has given an attorney authority to act on its behalf, whether JUA had approved or ratified Grabouski's email, or whether JUA's attorneys were engaged in settlement negotiations with Cunningham.  She asserted that she is a claims manager, but she does not aver what her job entails or give any indication of how the job gives her personal knowledge of the facts she asserts.  She did not state, for example, that her job required her to be involved in every stage of the claims

28

process, including all settlement negotiations and all communications by JUA attorneys with other parties. That she works on claims filed with JUA is not enough to show personal knowledge of the kinds of facts she asserted in her affidavit.

JUA presented no other evidence that Carey and Grabouski were not authorized to negotiate a settlement with Cunningham on behalf of JUA. That it presented no testimony from Carey or JUA's attorney Wilson, two individuals with personal knowledge of the representations that they had made to Youngblood, is striking to say the least. And we note that in JUA's answers to Cunningham's interrogatories, when asked if Carey had authority to negotiate on behalf of JUA, it objected and would only answer that the email did not reference any negotiations by Carey regarding the JUA funds in the court's registry. But despite JUA's failure to produce competent evidence on this point, the trial court had before it evidence that was sufficient to negate the existence of an agreement satisfying Rule 11.

In her deposition, Youngblood acknowledged that the only signed writing she had evidencing a contract was the email. But as we have already held, the email was not signed. Furthermore, nothing in the email text indicates JUA's acceptance of Cunningham's offer, only the acceptance of HealthFirst and Ezukanma. Thus, even if Grabouski had the authority to negotiate for JUA and bind it to an agreement reached in negotiations, this email does not indicate that Grabouski was agreeing to any terms on behalf of JUA. Because this email does

29

not meet the requirements of Rule 11 with respect to JUA and because JUA produced summary judgment evidence showing that Cunningham had no other writing evidencing JUA's agreement that satisfied Rule 11, JUA met its summary judgment burden.[62] On appeal, Cunningham does not point out any summary judgment evidence produced in the trial court that raised a question of fact on the existence of any other writing satisfying Rule 11. Accordingly, we cannot say that the trial court erred by granting summary judgment for JUA.

Cunningham next argues that the trial court erred by overruling his special exceptions. Cunningham did not specially except to the part of JUA's motion in which it asserted as a ground for summary judgment that the email was not an enforceable Rule 11 agreement. Accordingly, if the trial court erred by overruling Cunningham's special exceptions, any such error was harmless.[63] We overrule the remainder of Cunningham's third issue.

## D. Did the trial court err by denying Cunningham's motion for summary judgment against JUA?

In his fourth issue, Cunningham argues that the trial court erred by denying his motion for summary judgment on his claim against JUA. Having determined that the trial court did not err by granting summary judgment for JUA on Cunningham's claim, we overrule this issue.

---

[62]*See Frost Nat'l Bank*, 315 S.W.3d at 508; *see* Tex. R. Civ. P. 166a(b), (c).

[63]*See* Tex. R. App. P. 44.1(a).

**E. Did the Dallas County trial court err by transferring the case to Tarrant County?**

In his fifth issue, Cunningham argues that the Dallas County district court erred by transferring this case to Tarrant County, where venue was lacking, based on "convenience of the parties." He points out that section 15.002(b) of the civil practice and remedies code allows transfer of venue for convenience of the parties when the trial court makes three specified findings.[64] He then notes that the trial court in this case did not make those findings. He also argues that section 15.002(b) allows transfer to another county of proper venue and that he established in the trial court that Tarrant County was not a proper county. Thus, he argues, the trial court erred by granting the motion to transfer venue. He also argues that this court may review that order despite the language of section 15.002(c), which states that "[a] court's ruling or decision to grant or deny a transfer under Subsection (b) is not grounds for appeal . . . and is not reversible error."[65] He argues that the cases discussing section 15.002(b) and (c) involved cases where transfer was to a proper county, and because transfer in this case was not to a proper county, the order is reviewable.

The statute itself and the Supreme Court of Texas's opinion in *Garza v. Garcia*[66] leads us to a different conclusion. In that case, the defendant moved for

---

[64]Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b).

[65]*Id.* § 15.002(c).

[66]137 S.W.3d 36 (Tex. 2004).

a transfer of venue to Hidalgo County because all of the events giving rise to the claim arose there, and alternatively asked the court to transfer to Hidalgo "for the convenience of the parties."[67] The trial court granted the motion, and its order gave no reasons for granting the transfer, "and in particular never mentioned the term 'convenience of the parties.'"[68] The Supreme Court held that the trial court's order was beyond review. The court noted the general rule that "trial judges and lawyers need not detail specific findings in every order" and stated that it did not believe the potential for error or injustice in that case justified making an exception to the rule.[69] Thus, a trial court is not required to state that it had made the three required findings in section 15.002(b) in its order. The court further stated that "it is irrelevant whether a transfer for convenience is supported by *any* record evidence," and it noted that, "[h]ypothetically, a trial judge could state there was no evidence for a convenience transfer, but grant it nonetheless, and . . . there is very little we could do about it."[70] Thus, whether Cunningham established that Tarrant County was not a proper venue is irrelevant to the question of whether we may review the order.

---

[67]*Id.* at 38.

[68]*Id.* at 41 (Phillips, J. dissenting).

[69]*Id.* at 39.

[70]*Id.*

The statute states that an order granting a transfer for convenience of the parties is not reviewable, and it does not condition its application on whether the trial court made the findings required under subsection (b) or whether the order was supported by evidence.[71]  Under *Garza* and the plain language of the statute, the trial court's order is not reviewable by this court.  We overrule Cunningham's fifth issue.

## IV.  Conclusion

Having overruled all of Cunningham's issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  September 15, 2011

---

[71]Tex. Civ. Prac. & Rem. Code Ann. § 15.002(c).

33