**AFFIRM; and Opinion Filed July 23, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00694-CV

### CLYDE R. PARKS, Appellant
### V.
### SCOTT A. SEYBOLD, Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC11-10220**

## MEMORANDUM OPINION

Before Chief Justice Wright[1] and Justices Lang-Miers and Brown
Opinion by Justice Brown

Appellant Clyde R. Parks appeals a judgment granted in favor of appellee Scott A.

Seybold to recover a debt owed on a note after suit on the note became barred by limitations.

Following a bench trial, the trial court entered a judgment in favor of Seybold based on Parks's

written acknowledgment of the debt. Parks presents five issues on appeal,[2] and complains (1) the

trial court erred in finding he was a joint obligor on the underlying note, (2) the trial court erred

in concluding his e-mails met the legal requirements of an acknowledgment, (3) the trial court

erred in awarding interest on the note, (4) there is no evidence to support the trial court's finding

that he "signed" the written acknowledgment, and (5) the judgment erroneously states the case

---

[1] Justice O'Neill was a member of the original submissions panel. Although Justice Schenck became a member of the panel as Justice O'Neill's successor, he did not participate in the disposition of the case. Pursuant to the Court's Operating Rules, Chief Justice Carolyn Wright is substituted in place of Justice Schenck on the panel.

[2] Seybold has not filed a brief in this appeal.

was tried to a jury, rather than the court. For the following reasons, we affirm the trial court's judgment.

Background

Gaming Management Corporation (GMC) executed a note payable to Scott Seybold in the original principal amount of $10,000, plus fifteen percent interest. The note was handwritten by Clyde Parks and he signed it for GMC in his capacity as its vice-president. Parks also signed the note "individually." Above his individual signature, Parks wrote "Secured by Super Bowl Tickets 1-38."

GMC became defunct and neither it nor Parks timely paid on the note. Parks, however, made some sporadic payments on the note before limitations expired. When Seybold sought full payment on the note after limitations expired, Parks responded with several e-mails in which he referenced the debt and told Seybold he was working on getting funds to pay him. For example, one such email stated in pertinent part:

> Talking with people for loans or sale of tickets. . . . . Going to visit Dennis at bank in next couple of days to see if any room for loan on Suzanne's car. Trying to collect monies from some clients (small amounts). Not ignoring you! I want this matter resolved as soon as possible. Without interest what is balance? I have sold all assets and like you am feeling pressure from all areas. Will try to give you update daily if you wish.
>
> Thank You,
> Clyde
>
> LAW OFFICES OF CLYDE R. PARKS
> ATTORNEYS & COUNSELORS AT LAW
> [contact information omitted]

When Parks failed to pay the amount that remained due on the note, Seybold filed suit. He asserted various claims including a claim that Parks breached a written acknowledgment. Following a bench trial, the trial court entered judgment in favor of Seybold on the acknowledgment claim. The trial court awarded Seybold the principal amount that remained

due on the note, plus pre and post-judgment interest at the rate specified in the note. The trial court made findings of fact and conclusions of law to support its judgment. Parks appeals.

## Joint Obligor

In his second issue, Parks complains the trial court erred in concluding he was a joint obligor on the note. Under this issue, Parks asserts he was not jointly obligated on the note because he signed the note in his capacity as the "V.P." of GMC. *See, e.g., First Nat. Bank in Garland v. Murphy*, 441 S.W.2d 661, 663 (Tex. Civ. App.—Dallas 1969, no writ). Parks acknowledges he also signed the note individually, but claims he did so only to "evidence" his "pledge" of personal Super Bowl tickets. He then states, with no citation to authority and no argument or substantive analysis, that he was not individually obligated on the note because he did not guaranty or receive consideration for the note.

A party must provide legal authority and substantive analysis pertinent to the legal issue that we must decide. *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). References to legal authority that have nothing to do with the issue to be decided do not comply with the rules of appellate procedure. *Bolling*, 315 S.W.3d at 896.

Here, Parks fails to cite us to any applicable authority or provide us with any legal argument regarding the general legal effect of a second party signing a note or the specific effect of his own signature on the note. *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 3.419 (West 2004) (instruments signed for accommodation); *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 718 (Tex. App.—Dallas 1995, no writ) (liability of co-maker on a note). Therefore, even if we agreed with Parks that his signature for GMC did not show he was individually obligated on the note, Parks has failed to show reversible error. We resolve the second issue against Parks.

Acknowledgment

In his fourth issue, Parks asserts the trial court erred in concluding his e-mails constituted a valid acknowledgment under the provisions of section 16.065 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.065 (West 2015). A creditor may sue to recover a debt otherwise barred by limitations if the debtor has acknowledged the debt in writing. *Estate of Curtis*, No. 06-14-00037-CV, 2015 WL 3487079, *10 (Tex. App. — Texarkana, June 3, 2015, no pet. h.). Such an acknowledgement must: (1) be signed by the party to be charged, (2) contain an unequivocal acknowledgment of the justness or the existence of the particular obligation, and (3) refer to the obligation and express a willingness to honor that obligation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.065 (West 2015); *Stine v. Stewart*, 80 S.W.3d 586, 591 (Tex. 2002). When a creditor so acknowledges a debt, the law implies a promise to pay the debt and the debtor may sue for breach of that promise. *See Hanley v. Oil Capital Broad. Ass'n*, 171 S.W.2d 864, 865−66 (Tex. 1943); *Cotulla v. Urbahn*, 135 S.W. 1159, 1162 (Tex. 1911). It is not necessary that the acknowledgment itself include a promise to pay a particular amount or even identify the particular debt, but the debt referred to must be susceptible of ready ascertainment. *See Cotulla,* 135 S.W. at 1162; *Hutchings v. Bayer*, 297 S.W.2d 376, 378 (Tex. Civ. App.—Dallas 1956, ref'd n.r.e.); *Estate of Curtis*, 2015 WL 3487079 at *10. Whether a writing meets the requirements of Section 16.065 is a question of law. *Martindale Mortg. Co. v. Crow*, 161 S.W.2d 866, 870 (Tex. Civ. App.—El Paso 1941, writ ref'd w.o.m.); *Matter of Vineyard Bay Dev. Co., Inc.*, 132 F.3d 269, 271 (5th Cir. 1998) (applying Texas law). But whether an acknowledgment refers to the particular debt sued on is a question of fact. *Hutching*, 297 S.W.2d at 378.

In this issue, Parks asserts his e-mails did not constitute an acknowledgment because the e-mails were "too vague" and "indefinite" to create an enforceable contract. *See e.g., Bendalin v.*

*Delgado*, 406 S.W.2d 897, 899 (Tex. 1966). In doing so, Parks assumes that because a written acknowledgment creates a new obligation, that the *writing* must contain each essential element of a valid enforceable contract. Parks misunderstands the writing requirement necessary to revive a debt otherwise barred by limitations.

If a writing acknowledges the justness of a claim, that acknowledgment imports (1) an admission that the claim is a subsisting debt, and (2) a promise to pay it, if unaccompanied by any circumstances repelling the presumption of willingness or intention to pay. *Hanley*, 171 S.W.2d at 865; *see also Stein v. Hamman*, 6 S.W.2d 352, 353 (Tex. 1928); *see also House of Falcon v. Gonzalez*, 583 S.W.2d 902, 905 (Tex. Civ. App.—Corpus Christi 1979, no writ); *Mandola v. Oggero*, 508 S.W.2d 861, 863 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ). Although a cause of action on an acknowledgment is based on breach of the new promise, that promise is to pay the old debt. *See Doncaster v. Hernaiz,* 161 S.W.3d 594, 605 (Tex. App.—San Antonio 2005, no pet.) (effect of such an acknowledgment is to create a new promise to pay the old debt).

Here, it is undisputed the debt Parks was referring to in his e-mails was the debt on the note. Although Parks asked for more time to pay that debt, he unequivocally acknowledged it as a current obligation and expressed his intention and willingness to pay it. *See Hanley*, 171 S.W.2d at 866 (promise to pay may be inferred from debtor requesting "creditor's indulgence, promising to remit a portion of the indebtedness, or . . . creditor's forbearance until he is able to raise the money). Further, both the debt and the amount due thereon was susceptible of ready ascertainment. We conclude Parks' e-mails met the requirements of a written acknowledgment. *See Starr v. Ferguson*, 166 S.W.2d 130, 131 (Tex. 1942).

Interest

In his fifth issue, Parks asserts the trial court erred in awarding prejudgment interest because his acknowledgment did not include an agreement to pay interest on the note. In its judgment, the trial court awarded Seybold the principal amounts that remained due on the note and "prejudgment" interest on that amount at the rate specified in the note from the date of the note's execution.[3]

Here, Parks essentially reurges the arguments raised above, asserting the trial court erred in its award of interest because he did not agree to pay interest on the note when he acknowledged that debt. However, as explained above, Parks's e-mails unequivocally acknowledged the debt and expressed an intent and willingness to pay it. That debt was not limited to the repayment of principal, but included fifteen percent interest. That interest rate also continued after the note matured. *See Petroscience Corp. v. Diamond Geophysical, Inc.*, 684 S.W.2d 668 (Tex. 1984) (where note silent, it is implied pre-maturity interest rate continues after maturity). Consequently, we cannot agree the trial court erred in awarding Seybold interest on the note as part of the debt Parks acknowledged. *Sw. Am. Life Ins. Co. v. Dunn*, 344 S.W.2d 948, 952 (Tex. Civ. App.—Eastland 1961, writ ref'd n.r.e.) (provision for interest in note is as much part of the debt as the principal). Parks's complaint with respect to post-judgment interest is premised entirely on his complaint regarding prejudgment interest. Consequently, that complaint presents nothing further to review. We resolve the fifth issue against Parks.

Electronic Signature

In his third issue, Parks contends there is no evidence that he "signed" his e-mails in accordance with the provisions of the Texas Uniform Electronic Transactions Act (TUETA). As

---

[3] Although the term "prejudgment" interest is a term of art that generally refers to "interest as damages," the trial court's findings reflect it awarded interest accrued on the note and as such constituted "interest as interest." *See Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551–52 (Tex. 1985) (discussing distinction between "interest as interest" and "interest as damages").

–6–

noted, an acknowledgment must not only be in writing, but it must also be signed by the party to be charged with the debt. Here, the trial court made findings to support its conclusion that Parks's e-mails constituted a signed writing in accordance with the provisions of the TUETA.

Under TUETA, the legal requirement that a writing be signed can be satisfied with an electronic signature. TEX. BUS. & COM. CODE ANN. § 322.007(c), (d) (West 2009); *Celmer v. McGarry*, 412 S.W.3d 691, 718 (Tex. App.—Dallas 2013, pet. denied). An "electronic signature" is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." TEX. BUS. & COM. CODE ANN. § 322.007(8) (West 2009). An electronic signature is "attributable to a person if it was the act of the person." TEX. BUS. & COM. CODE ANN. § 322.009(a) (West 2009). The effect of an electronic signature is determined from "the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." *Id*. at § 322.009(b).

In its findings of fact, the trial court found that each of Parks's e-mails contained an automatically generated signature block, but that before that signature block Parks signed the e-mails "Thank you, Clyde." The trial court further found Parks intended that valediction to constitute his signature. On appeal, Parks asserts there is no evidence to support the trial court's finding because the evidence showed "Thank you, Clyde" was also automatically generated.

We begin by noting that Parks has not analyzed his complaint under the standard of review under which we must review the trial court's finding. A trial court's fact findings are entitled to the same force and dignity as a jury's verdict. *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 519 (Tex. App.—Dallas 2014, no pet.). In reviewing the legal sufficiency of the evidence to support a trial court's finding of fact, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact finder could

and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller*, 168 S.W.3d at 822, 827 (Tex. 2005). There is legally insufficient evidence or "no evidence" when the record reveals one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

At trial, Parks testified and admitted that he personally sent the e-mails. Each e-mail was concluded, "Thank you, Clyde," above a block containing Parks's full name and contact information. To show he did not intend to sign the e-mails, Parks relies on his own testimony at trial that he did not type his "name" at the "end" of the e-mails, and that his name was automatically generated.[4] However, when he elaborated, Parks testified he did not write "Clyde Parks" at the end of the e-mails, which was beneath the valediction that the trial court found constituted Parks's signature. Parks also asserts a single e-mail he sent to Seybold, in which he did personally type "Thanks" at the end of the last paragraph of the e-mail, shows the subsequent "Thank you, Clyde" on that, and all other e-mails, was automatically generated. In doing so, Parks would have us draw inferences from the evidence that are contrary to the trial court's findings. But, in reviewing the sufficiency of the evidence, we must assume the trial court made all inferences in favor of its finding if reasonable minds could, and disregard all other inferences. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 621 (Tex. 2014). Applying his standard, we conclude there is more than a scintilla of evidence to support the trial court's finding that Parks himself signed the e-mails "Thank you, Clyde." Parks has not otherwise

---

[4] We focus on whether the valediction was automatically generated because the trial court specifically relied on the portion of the e-mail Parks typed instead of the automatically generated block to support its finding that Parks intended to sign the e-mail. We express no opinion as to whether or when an automatically generated signature attached to an e-mail could constitute an electronic signature.

challenged the sufficiency of the evidence to support the trial court's finding that he had the requisite intent when he did so.

Parks next asserts his signature did not meet the requirements of an electronic signature because there is no evidence he agreed to conduct transactions electronically. TUETA applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. TEX. BUS. & COM. CODE ANN. § 322.005(b) (West 2009). Whether parties have agreed to conduct transactions by electronic means is a question of fact that is determined from the context and surrounding circumstances, including the parties' conduct. TEX. BUS. & COM. CODE ANN. § 322.005(d) (West 2009); *See Celmer*, 412 S.W.3d at 701; *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 529 (Tex. App.—Fort Worth 2011, pet. denied).

According to Parks, the trial court could not consider his electronic signature because there is no evidence of a written or other "independent" agreement showing he agreed to conduct business transactions electronically. The Act does not, however, require such express proof. *See* TEX. BUS. & COM. CODE ANN. § 322.005(d) (West 2009); *see also Celmer*, 412 S.W.3d at 701; *Cunningham*, 352 S.W.3d at 529. Here, the trial court found the parties' discussions, interactions, and behavior showed they agreed to transact some business electronically. Reviewing the evidence in the light most favorable to the trial court's finding, we conclude evidence of Parks' conduct in sending the e-mails, the content of those e-mails, and the context and circumstances under which those e-mails were sent constitute more than a scintilla of evidence that Parks agreed to conduct the business contained therein electronically. *See Dittman v. Cerone*, 13-11-00196-CV, 2013 WL 5970356, at *8 (Tex. App.—Corpus Christi Oct. 31, 2013, no pet.) (mem. op). We resolve the third issue against Parks.

Error in Judgment

Finally, we address Parks's first issue complaining of an error in the trial court's judgment. Specifically, Parks asks that we require the trial court to reform its judgment to correct a recitation stating the case was tried to a jury rather than the court. In its recitations, the trial court's typed judgment stated that it was "tried before a jury." The trial judge, however, crossed that out and wrote that the case was tried "without" a jury. The judgment also erroneously states a "jury verdict" was received. We modify the judgment to delete the phrase "and receipt of the jury's verdict." See TEX. R. APP. P. 43.2(b). As modified, we affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE


130694F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CLYDE R. PARKS, Appellant

No. 05-13-00694-CV      V.

SCOTT A. SEYBOLD, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC11-10220.
Opinion delivered by Justice Brown. Chief Justice Wright and Justice Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SCOTT A. SEYBOLD recover his costs of this appeal from appellant CLYDE R. PARKS.


Judgment entered this 23rd day of July, 2015.