Shelia WILLIAMSON, Plaintiff,

v.

The BANK OF NEW YORK MELLON f/k/a The Bank of New York, as Trustee for the Certificateholders CWABS, Inc., Asset–Backed Certificates, Series 2006–19, and Bank of America, N.A., Defendants.

Civil Action No. 3:12–CV–1079–N.

United States District Court,
N.D. Texas,
Dallas Division.

May 16, 2013.

Shelia Williamson, Irving, TX, pro se.

C. Charles Townsend, Andrew D. Thomas, Michael J. McKleroy, Jr., Walter McInnis, Akerman Senterfitt LLP, Dallas, TX, for Defendants.

## *ORDER*

DAVID C. GODBEY, District Judge.

This Order addresses Defendants The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWABS, Inc., Asset–Backed Certificates, Series 2006–19 ("BNYM") and Bank of America, N.A.'s ("Bank of America" and, collectively with BNYM, the "Banks") motion to enforce the parties' settlement agreement [Doc. 17]. The Court grants the motion.

## I. THE PARTIES' DISPUTE AND SETTLEMENT AGREEMENT

This case arises out of the foreclosure of Williamson's home (the "Property"). Williamson purchased the Property with the help of a loan from Ark–La–Tex Financial Services, LLC. In connection with the loan, she executed a promissory note and a deed of trust securing the note and encumbering the Property. At some point after the sale closed, Countrywide Home Loans ("Countrywide") claimed to be entitled to collect Williamson's payments on the note.

In 2011, Williamson was no longer able to make her mortgage payments, so she and Countrywide entered into what Williamson characterizes as a "loan modification agreement." Pet. ¶ 23. Williamson made three trial payments under an altered loan repayment plan. Countrywide allegedly did not apply these trial payments to the loan's outstanding balance. Bank of America later acquired the note and deed. Bank of America refused to honor the alleged Williamson–Countrywide modification agreement. Williamson subsequently applied for a loan modification from Bank of America on four occasions, but Bank of America denied each application. Williamson fell behind on her mortgage payments, and Bank of America foreclosed on the Property.

In her petition, filed in state court, Williamson asserts various claims against the Banks arising out of the foreclosure. The Banks removed the case to this Court and then moved to dismiss Williamson's petition under Federal Rule of Civil Procedure 12(b)(6). Before the Court could rule on that motion, the Banks' attorney, Walter McInnis, and Williamson's attorney, Marc Girling, exchanged a number of emails in an attempt to settle their clients' dispute. Several of those emails are relevant to this

motion. On November 29, 2012, McInnis sent Girling an email proposing the terms of a settlement agreement. Defs.' App. Supp. Mot. Enforce [hereinafter Defs.' App.] [17–3] 2–3. Under the proposed agreement, Bank of America would pay Williamson $2500. *Id.* at 3. For her part, Williamson would, among other things, vacate the Property no later than January 24, 2013 and release all the claims she asserted against the Banks in this action. *Id.* On December 5, Girling counteroffered, stating that Williamson was willing to accept $4000 and would vacate on or before February 1. He wrote that "[t]his offer will remain open until 3:00pm today." *Id.* at 2. Later that day, McInnis sought clarification of the counteroffer, asking Girling to confirm whether Williamson was "proposing all of the same terms as [the Banks' November 29] offer," excepting only the two changes noted above. *Id.* at 1. Still later on December 5, Girling responded, "Yes. That is correct." *Id.* At 2:44 p.m. the same day—before the 3:00 p.m. deadline—McInnis wrote the following:

> That's doable. I'll probably need seven days to get your client a draft Settlement Agreement to review, then it'll probably take a few weeks to get it executed on my side.... We should probably get something on file with the court letting the Judge know we are trying to paper a settlement.

*Id.* Girling concluded his emails to McInnis with his first name, "Marc." *Id.* at 1–3. McInnis closed his with a "signature block"—a block of text containing McInnis's name and contact information. *Id.* The parties thereafter jointly notified the Court that they had "reached an agreement on terms of settlement." Joint Notice of Settlement [11] 1.

On January 18, 2013, Williamson terminated Girling's representation. *See* Pl.'s Mot. Withdraw, Ex. A. [12–2]. Girling promptly filed, and the Court granted, a motion to withdraw. Pl.'s Mot. Withdraw [12]; Order, Feb. 1, 2012 [13]. Williamson has not hired another attorney. Moreover, she has refused to abide by the terms of the settlement agreement Girling negotiated on her behalf. The Banks now move to enforce the agreement, and Williamson has not responded to the Banks' motion.

## II. STANDARD OF REVIEW FOR MOTIONS TO ENFORCE SETTLEMENT AGREEMENTS

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir.1994). A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995). Since Texas law applies to this case, Texas Rule of Civil Procedure 11 controls. *See id.; Condit Chem. & Grain Co., Inc. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102–03 (5th Cir.1986) (applying Rule 11, nominally a procedural rule, because "[i]t is obvious from the nature of this Texas rule that it is a law of controlling substance").

The purpose of Rule 11 is to forestall the "misunderstandings and controversies" that often attend oral agreements between counsel. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex.1995) (quoting *Birdwell v. Cox*, 18 Tex. 535, 537 (Tex.1857)). Under the rule, a settlement agreement is enforceable only if it is (1) "in writing, signed and filed with the papers as part of the record" or (2) "made in open court and entered of record." TEX.R. CIV. P. 11; *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000). Because no settlement in this case was made in open court, only the first of

these possibilities is at issue here. The Texas Supreme Court has held that " 'slavish adherence' to the literal language of the rule" is not necessary in all cases. *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984) (identifying various exceptions to Rule 11) (quoting *Sone v. Braunig,* 469 S.W.2d 605, 611 (Tex.Civ.App.-Beaumont 1971, writ ref'd n.r.e.)).

### III. THE SETTLEMENT AGREEMENT IS ENFORCEABLE

Even though the parties did not sign a physical agreement, and even though Williamson's attorney withdrew after reaching an agreement with the Banks, the parties' settlement agreement is enforceable.

#### A. The Agreement Meets the Requirements of Rule 11

**█ 1. The Agreement Is in Writing.**—To determine whether an agreement satisfies this requirement, courts look to the same Texas contract principles they use to determine whether a writing satisfies the statute of frauds. *Padilla,* 907 S.W.2d at 460. That is, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Id.* (quoting *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978)). The memorandum, though, does not have to take the form of a single document. *Id.*

█ The written memorandum in this case exists as a series of emails between Girling and McInnis. The Texas Supreme Court held in *Padilla* that a series of letters may satisfy the "in writing" requirement of Rule 11, provided they meet the other requirements set out above. *Id.* The Court has not addressed, however, whether an email exchange may do so as well. When a state high court has not ruled on a particular issue of state law, a federal court must make an *"Erie* guess" and determine as best it can what the state high court would most likely decide. *See Erie v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 317 (5th Cir. 2002).

The Court predicts that the Texas Supreme Court would hold that a series of emails may satisfy Rule 11's "in writing" requirement. Most importantly, the Texas Uniform Electronic Transactions Act ("TUETA")[1] states that "[i]f a law requires a record to be in writing, an electronic record satisfies the law." TEX. BUS. & COM.CODE § 322.007(c). Also supporting the Court's conclusion is a Texas appeals court's holding that a series of emails, among other pieces of evidence, "confirmed a settlement agreement between the parties." *Green v. Midland Mortg. Co.,* 342 S.W.3d 686, 691 (Tex.App.-Houston [14th Dist.] 2011, no pet.). Moreover, another Court in this District has concluded that an email exchange later signed by an attorney was a valid writing under Rule

---

1. TUETA "applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." TEX. BUS. & COM.CODE § 322.005. Here, the parties' lengthy email exchange and the content of those emails demonstrate an intent to conduct

their settlement negotiations via electronic means. *See Dittman v. Cerone,* No. 13-11-00196-CV, 2013 WL 865423, at *7-8 (Tex. App.-Corpus Christi Mar. 7, 2013, no pet.) (finding legally sufficient evidence of agreement to conduct business electronically "where the parties exchanged communications regarding offers and counteroffers about the Stable Property via e-mail messages"); *see also* Joint Notice of Settlement.

11. *Dymatize Enters. Inc. v. Maximum Human Performance, Inc.,* No. 3:09–CV–0046–O–BH, 2010 WL 4788573, at *5 (N.D.Tex. Sept. 20, 2010), *report and recommendation adopted,* No. 3:09–CV–046–O, 2010 WL 4788571 (N.D.Tex. Nov. 17, 2010). The Court's best guess, then, is that the Texas Supreme Court would decide that an email exchange may, provided it meets the other requirements that Court has set out, qualify as a written agreement under Rule 11.

■ The Court must next determine whether the series of emails in this case is "complete within itself in every material detail" and "contains all of the essential elements of the agreement." *Padilla,* 907 S.W.2d at 460. Girling and McInnis's agreement establishes that (1) Bank of America is to pay Williamson $4000; (2) Williamson is to release the Banks and related entities from any claims that were asserted, or could have been asserted, in this litigation; (3) Williamson agrees that Bank of America may foreclose on the Property; and (4) Williamson was to have vacated the Property by February 1, 2013. Defs.' App. 1–3. Based on these terms, the Court determines that the parties' memorandum, as expressed in their email exchange, was compete in every material detail and that it contained all the essential elements of their agreement. It therefore satisfies Rule 11's "in writing" requirement.

**2. The Agreement Is Signed.**—Rule 11 requires not just a writing, but a signed writing. Under TUETA, "[i]f a law requires a signature, an electronic signature satisfies the law." Tex. Bus. & Com.Code § 322.007(d). An electronic signature, in turn, is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by

a person with the intent to sign the record." *Id.* § 322.002(8). The Texas Supreme Court has not considered how these rules apply to emails like those in this case.

■ The Court's best *Erie* guess is that the Texas Supreme Court would consider the relevant emails in this case to be signed under TUETA and Rule 11. Girling closed all of his emails with his first name. Defs.' App. 1–3. All of McInnis's end with his signature block. *Id.* For the purposes of this motion, the Court assumes that Girling manually typed his name but that McInnis's email client automatically attached his signature block. Regardless of whether the names and signature blocks were manually typed or automatically attached, though, the Court would reach the same result.

*Manually Typed Names.*—First, the Court concludes that Girling's manually typed names qualify as electronic signatures.[2] They represent electronic symbols attached to a record and executed with the intent to sign the record as contemplated by TUETA. A signature on a letter suffices to satisfy Rule 11, *Padilla,* 907 S.W.2d at 461, and the Court concludes that a hand-typed name at the bottom of an email does, too. *See Kennedy,* 682 S.W.2d at 529 (noting that "slavish adherence" to Rule 11 is not always necessary). A typed name at the end of an email is similar to a "signature" on a telegram, the latter of which can satisfy the statute of frauds. *See Adams v. Abbott,* 151 Tex. 601, 254 S.W.2d 78, 80 (1952) ("[A] valid memorandum of the contract may consist of letters and telegrams signed by the party to be charged and addressed to his agent or the other party to the contract. . . .").

---

**2.** To the extent Girling's email client attached his name automatically, the Court accepts it as a signature for the reasons discussed in the next subsection.

A number of other courts have similarly found that names typed at the end of emails can be signatures under various states' statutes of frauds and enactments of the Uniform Electronic Transactions Act ("UETA"), which is the source of TUETA. *E.g., Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 391 (5th Cir.2010) (affirming that "[e]mails can qualify as the signed writings needed to form contracts" under Louisiana's UETA); *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1362 (Fed.Cir.2005) (opining that inclusion of individual's name on email would be valid signature under California's UETA); *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295–96 (7th Cir.2002) (holding that "the sender's name on an e-mail satisfies the signature requirement of the [Illinois] statute of frauds" and noting that it would be valid signature under federal Electronic Signatures in Global and National Commerce Act as well); *Adani Exps. Ltd. v. AMCI Exp. Corp.*, Civ. A. No. 05–304, 2007 WL 4298525, at *11 (W.D.Pa. Dec. 4, 2007) (finding email sufficient to meet requirements of Pennsylvania statute of frauds); *Roger Edwards, LLC. v. Fiddes & Son, Ltd.*, 245 F.Supp.2d 251, 261 (D.Me.2003), *aff'd in part, dismissed in part*, 387 F.3d 90 (1st Cir.2004) (same for Maine statute of frauds); *Waddle v. Elrod*, 367 S.W.3d 217, 228–29 (Tenn.2012) (same for Tennessee); *Williamson v. Delsener*, 59 A.D.3d 291, 874 N.Y.S.2d 41 (N.Y.App.Div.2009) (same for New York); *see also Tricon Energy, Ltd. v. Vinmar Int'l, Ltd.*, No. 4:10–CV–05260, 2011 WL 4424802, at *11 (S.D.Tex. Sept. 21, 2011) (holding, without reference to TUETA, that two emails closing with typed names "represent signed writings under the Texas UCC"). Though not binding, the Court considers these cases instructive.

*Automatically Attached Signature Blocks.*—The question of whether automatically attached signature blocks qualify as signatures under Rule 11 is murkier. One state appellate court has held that they do not. *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 530 (Tex.App.-Fort Worth 2011, pet. denied). The *Cunningham* court reasoned, on facts similar to those of this case, that a signature block did not evince an intent to sign an email as required by TUETA. *See* TEX. BUS. & COM.CODE § 322.002(8). The court noted that the attorney's signature block in that case could have been "generated automatically by her email client." *Id.* Alternately, the attorney could have "personally type[d] the signature block at the bottom of the email." *Id.* In either case, the court reasoned, the signature block did not demonstrate the requisite intent, was not an electronic signature, and did not meet Rule 11's signature requirement.[3] *Id.* The Court is aware of no other opinion addressing a signature block. The Court respectfully disagrees with *Cunningham* and concludes, for three reasons, that the Texas Supreme Court would disagree as well.

First, McInnis's email client did not create a signature block of its own volition. Rather, McInnis must have generated his signature block at some point in the past.[4] He then directed his email client to attach the signature block to his subsequent outgoing email. The Court concludes that

---

**3.** This reasoning suggests that the *Cunningham* court would also conclude that a manually typed name would also not be an electronic signature. For the reasons set out above, the Court respectfully disagrees.

**4.** If he did not generate it himself, he presumably directed its creation or, at the very least, approved it. In any event, the Court finds any of these actions to be sufficient to demonstrate intent.

these actions affirmatively show intent to sign the record as required by TUETA. There is no fundamental difference between, on one hand, manually typing a signature block into a series of emails and, on the other, typing the block once and instructing a computer program to append it to future messages. Further supporting the conclusion that the attorneys intended to sign the agreement and make it binding is the fact that they filed a joint notice of settlement announcing to the Court that the parties had "reached an agreement on terms of settlement." Joint Notice of Settlement 1. The Court thus concludes that the attorneys intended to sign and effectuate their agreement by way of their emails to one another. McInnis's signature block is, therefore, an electronic signature under TUETA, and it satisfies Rule 11.

Second, the Court's broad view of electronic signatures corresponds with TUETA's intent. As the Official Comment to the 2012 Electronic Pocket Part Update to TUETA notes, "[t]he purpose of the [T]UETA is to remove barriers to electronic commerce by validating and effectuating electronic records and signatures." TEX. BUS. & COM.CODE T. 10, Subt. B, Ch. 322, Refs & Annos. An expansive view of what constitutes an electronic signature helps effectuate this purpose. Moreover, the official comments to UETA suggest a similar approach. UETA contains the exact same definition of "electronic signature" that TUETA does. See UNIF. ELEC. TRANSACTIONS ACT § 2. Moreover, the comments to UETA note that "[t]he idea of a signature is broad and not specifically defined." Id., cmt. 7. They state that UETA "establishes, to the greatest extent possible, the equivalency of electronic signatures and manual signatures." Id. The comments specify that "including one's name as part of an electronic mail communication ... may suffice" to create a valid electronic signature. Id. They do not differentiate between manually typed and automatically attached names, and the Court believes that doing so would be improper. Considering a signature block an electronic signature is thus in line with the TUETA's and UETA's expansive purposes and rationales.

Third, the Court's interpretation accords with TUETA's requirement that that statute "must be construed and applied ... to be consistent with reasonable practices concerning electronic transactions and with the continued expansion of those practices." TEX. BUS. & COM.CODE § 322.006. Email communication is a reasonable and legitimate means of reaching a settlement in this day and age. And as a result of the "continued expansion" of email communication, a signature block at the bottom of an email has come to represent what a handwritten signature once represented: a means of identifying the sender, signaling that he or she adopts or stands behind the contents of the communication, and a method of ensuring that the communication is authentic. Because reaching settlements by email is currently a reasonable practice in the legal community, TUETA should be construed to be consistent with that practice. The Court's conclusion does just that.

In sum, the Court makes an *Erie* guess that the Texas Supreme Court would consider both a typed name and a signature block in an email to be electronic signatures under TUETA. Both, then, suffice to satisfy Rule 11's signature requirement. The Court therefore finds that both Girling and McInnis signed the parties' settlement agreement in this case within the meaning of Rule 11.

■■■■ *3. The Agreement Is Filed with the Court and Is Part of the Record.*—The Banks filed the parties' email exchange along with their motion to en-

force the settlement agreement. The exchange is thus now part of the record in this case. Both federal and state courts in Texas enforce agreements filed contemporaneously with motions seeking their enforcement. *E.g., Oliver v. Kroger Co.*, 872 F.Supp. 1545, 1549 (N.D.Tex.1994); *Padilla*, 907 S.W.2d at 461. The fact that the Banks apparently filed the agreement after Williamson withdrew her consent to its terms does not change the fact that the Banks "filed" it for the purposes of Rule 11. *See Padilla*, 907 S.W.2d at 461. The agreement therefore meets the third and final requirement of Rule 11.

### B. Williamson's Signature Was Not Required

The Court further notes that the settlement agreement is enforceable even though Williamson herself did not sign it. "The attorney-client relationship is an agency relationship. The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts . . . ." *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex.1986). There is no question that "an attorney may execute an enforceable Rule 11 agreement on his client's behalf." *Green*, 342 S.W.3d at 691 (citing *In re R.B.*, 225 S.W.3d 798, 803 (Tex.App.-Fort Worth 2007, no pet.)). Girling signed the settlement agreement on December 5, 2012. Def.'s App. 1–3. He was Williamson's attorney of record at that point and remained so for over a month thereafter. *See* Pl.'s Mot. Withdraw. Girling therefore entered into the agreement on Williamson's behalf, and her signature was not required. *Accord Green*, 342 S.W.3d at 691.

### CONCLUSION

Williamson and the Banks entered into an enforceable settlement agreement under Texas law. The Court therefore orders that the settlement agreement be enforced.