**Opinion issued December 22, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00006-CV

————————————

**JOHN KHOURY, Appellant**

**V.**

**PRENTIS B. TOMLINSON, JR., Appellee**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2012-61491

**O P I N I O N**

John Khoury sued Prentis B. Tomlinson, Jr., alleging securities violations under the Texas Blue Sky Laws, common-law fraud, and breach of contract. The jury found in favor of Khoury on all three claims. In response to Tomlinson's motion for judgment notwithstanding the verdict, the trial court disregarded the jury's

findings of liability on Khoury's securities violations and breach of contract claims. In three issues on appeal, Khoury argues that the trial court erred by disregarding the jury's findings on his securities and breach of contract claims and that, as a result, he is entitled to judgment recovering his attorneys' fees. In seven issues on cross-appeal, Tomlinson argues the trial court erred by denying his motion for judgment notwithstanding the verdict on Khoury's fraud claim.

We reverse and render.

## Background

Tomlinson is the president and CEO of PetroGulf, Ltd., a company "formed in August 2008 to be a physical trader of fuel oil and crude oil from Iraq into selective markets in the region." On December 9, 2008, Tomlinson met with Khoury and presented him with an 11-page business plan, seeking investment in PetroGulf. As a result of the meeting and the investment document, Khoury invested $400,000 in PetroGulf.

Dissatisfied with his investment and the lack of disclosures of PetroGulf's financial information, Khoury met with Tomlinson on January 9, 2012. During that meeting, Tomlinson agreed to personally repay Khoury the amount loaned to PetroGulf. They agreed that Tomlinson would repay the debt over a four or five year period. Khoury testified at trial that they had agreed that Tomlinson would elect whether to pay over four or five years. A week later, Khoury sent an email to

2

Tomlinson summarizing what agreements they had made. Tomlinson replied, writing, "We are in agreement."

Tomlinson did not make any of the payments he had agreed to make. Khoury brought suit alleging breach of contract, securities violations under the Texas Blue Sky Laws,[1] and common-law fraud. In his live answer, Tomlinson asserted that any recovery for breach of contract was barred by the Statute of Frauds. At trial, Tomlinson acknowledged sending the email but claimed that his statement of his being in agreement with Khoury referred to an agreement entirely different from the terms identified in the email to which he responded.

The jury found in favor of Khoury on all of his claims, awarding the same amount ($400,000) for each claim. The jury also awarded attorneys' fees. For the breach of contract claim, the jury found that Tomlinson had obligated himself to repay the investment amount to Khoury. It also found that Tomlinson breached that agreement.

After trial, Tomlinson filed a motion for judgment notwithstanding the verdict, seeking to overturn the jury's findings in favor of Khoury on each of Khoury's claims. For Khoury's breach of contract claim, Tomlinson argued that the jury's findings of liability should be overturned because the contract was barred by the Statute of Frauds and because the contract was too indefinite to be enforceable.

---

[1] *See* TEX. REV. CIV. STAT. ANN. art. 581-33 (Vernon 2010).

3

For his Statute of Frauds argument, Tomlinson acknowledged his email constituted a writing but argued the email was not signed. Tomlinson attached a copy of his email[2] to his motion.



Subject: Re: agreement
From: Prentis Tomlinson (██████████████████)
To: ██████████████;
Date: Monday, January 16, 2012 8:32 AM

We are in agreement and I am working on producing the financial documents you requested. My goal is to have completed by weeks end and forward to you. Also, I had a hard time watching my home state team's miserable performance - however as a former player you must have wanted to throw up.

Sent from my iPhone

On Jan 16, 2012, at 3:47 PM, "john khoury" <████████████████> wrote:

Prentiss,
To recap our meeting in Houston on Monday January 9, 2012, I would offer the following recap:
1. You confirmed your intention to repay the $400,000 loan I made to Petrogulf, as provided for in the documents , and for which I requested, as provided for, almost 2 years ago.
2. Eddie Moses had confirmed this to me in 2011, at a luncheon, at Babin's restaurant, approximately 6 months ago.
3. You were going to make the January interest payment, as per the original schedule, when you returned to Washington, D.C.
4. I agreed to reduce the interest from 14% to 7.5% on a 4 or 5 year payout. Four years P&I payments at $9,671.56, or 5 year P&I payments of $8,015.18.
5. You were also going to redo the books and records, to more accurately reflect the last 4 years for Petro-Gulf.
Please confirm this agreement. Also, please make the regular payment for January

Thank You for honoring your word. It is refreshing to know that you and I both respect this principle.

Best Regards,
John Khoury

The trial court granted the motion for the state securities violations claim and breach of contract claim. It denied the motion for the fraud claim.

---

[2] The redactions were added by this Court. The redacted information identified the email addresses for Khoury and Tomlinson.

**Standard of Review**

When a motion for judgment notwithstanding the verdict is premised on the legal sufficiency of the evidence to support a claim, rulings on a motion for JNOV and directed verdict are reviewed under the same legal-sufficiency test as are appellate no-evidence challenges. *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 395 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review."). Such a no-evidence challenge "'will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.'" *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

In our legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). With that evidence, we review "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . . [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable

5

jurors could, and disregard contrary evidence unless reasonable jurors could not."

*City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

This case also involves questions of statutory interpretation and contract construction. We review those questions de novo. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) (statutory interpretation); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (contract construction).

## Breach of Contract

In his second issue, Khoury argues the trial court erred by granting the judgment notwithstanding the verdict on his breach of contract claim. Tomlinson presented two grounds for why the jury's finding on liability should have been overturned. First, Tomlinson argued that the contract was barred by the Statute of Frauds. Second, Tomlinson argued that the contract was too indefinite to be enforceable.

### A.    Statute of Frauds

"[A] promise by one person to answer for the debt . . . of another person" "is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement . . . ." TEX. BUS. & COM. CODE ANN. § 26.01(a)(1)–(2), (b)(2) (Vernon 2015).

The parties agreed at trial that they met on January 9, 2012, and that they entered into an agreement. The evidence shows that, a week later, Khoury sent

6

Tomlinson an email listing the terms of their agreement and requesting Tomlinson's confirmation of those terms. Tomlinson acknowledged at trial that he received the email and sent the responding email, writing, "We are in agreement."

The email shows that Tomlinson's name does not appear in the body of the email that he wrote. His name and email address do appear, however, in the "from" field for the email. The question before us is whether the name or email address in the "from" field constitutes a signature for purposes of the Statute of Frauds. *See id.* § 26.01(a)(2).

It is undisputed by the parties that their email correspondence is governed by the Texas Uniform Electronic Transactions Act ("UETA"). *See* TEX. BUS. & COM. CODE ANN. §§ 322.001–.021 (Vernon 2015). Subject to exceptions not applicable to this case, UETA "applies to electronic records and signatures relating to a transaction." *Id.* § 322.003(a). "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form." *Id.* § 322.007(a). "If a law requires a signature, an electronic signature satisfies the law." *Id.* § 322.007(d). We must construe and apply UETA in a manner "to be consistent with reasonable practices concerning electronic transactions and with the continued expansion of those practices."[3] *Id.* § 322.006(2).

---

[3]    It is worth noting the history of the enactment of UETA. Before it was enacted in Texas, the federal government enacted E-SIGN. *See* TEX. BUS. & COM. CODE ANN. ch. 322 state bar committee comments 1 (Vernon 2015) (noting E-SIGN was

7

Under UETA, an electronic record is "a record, created, generated, sent, communicated, received, or stored by electronic means." *Id.* § 322.002(7). An electronic signature is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id.* § 322.002(8).

An email satisfies all of the disjunctive definitions of an electronic record. *See id.* § 322.002(7). A name or email address in a "from" field is a symbol logically associated with the email. *See id.* § 322.002(8). We are left to determine, then, whether a name or email address in a "from" field can be construed to be "executed or adopted by a person with the intent to sign the record." *See id.*

While UETA defines "electronic signature," it does not define "sign." This was by design. *See* TEX. BUS. & COM. CODE ANN. ch. 322 official comment (Vernon 2015) (recognizing UETA "defers to existing substantive law" for "the meaning and

---

enacted in 2000). E-SIGN preempts state laws on electronic transactions unless the states adopted UETA. 15 U.S.C.A. §§ 7001(a), 7002(a) (West 2009). Any exceptions the states enact to restrict the scope of the uniform code results in E-SIGN pre-empting those restrictions. *Id.* § 7002(a)(1). The Texas Legislature enacted UETA with the explicit intent of superseding E-SIGN. *See* TEX. BUS. & COM. CODE ANN. § 322.019 (Vernon 2015) ("This chapter modifies, limits, or supersedes the provisions of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. Section 7001 et seq.) as authorized by Section 102 of that Act (15 U.S.C. Section 7002)."); *see also* TEX. BUS. & COM. CODE ANN. § 322.003 state bar committee comment 1 (Vernon 2015) (recognizing chapter 322 "does not contain any non-uniform exceptions to the scope of [the uniform code] and does not therefore invoke the E-SIGN consistency test for preemption."). Nothing in this opinion should be read to restrict the application of the uniform code.

8

effect of 'sign'"). Accordingly, we look to existing law to determine the meaning and effect of "sign." *See id.*

"The signature of the person against whom enforcement is sought [under the Statute of Frauds] authenticates the document as reliable evidence of that person's agreement to the transaction." *Lone Star Air Sys., Ltd. v. Powers*, 401 S.W.3d 855, 859 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "[F]or the purpose of the Statute of Frauds, the signature of the 'person to be charged' is the act which authenticates the document as reliable evidence of that person's agreement to the transaction." *Capital Bank v. Am. Eyewear, Inc.*, 597 S.W.2d 17, 19 (Tex. Civ. App.—Dallas 1980, no writ). "What is essential [for a signature under the Statute of Frauds] is that the signature of the party to be charged shall authenticate the whole of the writing." *Gruss v. Cummins*, 329 S.W.2d 496, 500 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.); s*ee also Betts v. Betts*, No. 14-11-00267-CV, 2012 WL 2803750, at *2 (Tex. App.—Houston [14th Dist.] July 10, 2012, pet. denied) (mem. op.) (recognizing Texas law treats documents as signed when they contain any mark sufficient to show intent to be bound by document).

The "from" field in the email authenticated the writing in the email to be Tomlinson's. UETA expressly allows for automated transactions to satisfy the requirements of contract formation. *See* BUS. & COM. § 322.014. The very nature of automated transactions requires the mechanisms for the transaction to be

established in advance of the actual transactions. The fact that the name or email address to appear in a "from" field was set up in advance of sending the email in question, then, does not preclude any legal effect of the name or email address. *See also id.* § 322.006(2) (requiring UETA to be construed and applied consistently with continued expansion of practices for electronic communications); UNIF. ELECTRONIC TRANSACTIONS ACT § 2 cmt. 7 (UNIF. LAW COMM'N 1999) (recognizing that entering in identifying information into website and later clicking "I agree" button satisfies signature requirement).

Related authority backs up the conclusion that the name or email address in a "from" field functions as a signature in an email. The New Oxford American Dictionary defines sign to mean to "write one's name . . . to identify oneself as the writer or sender." *Sign*, THE NEW OXFORD AM. DICTIONARY (2d. ed. 2005). Black's Law Dictionary defines sign as "[t]o identify (a record) by means of a signature, mark, or other symbol with the intent to authenticate it as an act or agreement of the person identifying it." *Sign*, BLACK'S LAW DICTIONARY (10th ed. 2014). The "from" field functions to identify the sender of the email and authenticate the email as his act. Legal scholarship likewise recognizes this point. *See* Douglas B. Lang, *Electronic Settlement Agreements, Are They Enforceable in Texas?*, 64 TEX. B.J. 638, 644 (2001) (arguing "from" field in an email satisfies signature requirement for electronic messages).

Finally, other states that have adopted the uniform code have reached the same conclusion. *Int'l Casings Group, Inc. v. Premium Standard Farms, Inc.*, 358 F. Supp. 2d 863, 873 (W.D. Missouri 2005) (holding email header with name of sender constitutes signature under Missouri UETA); *Kluver v. PPL Mont., LLC*, 293 P.3d 817, 822–23 (Mont. 2012) (holding "from" field in email and statement of approval in body of email established email was signed); *Dalos v. Novaheadinc*, No. 1 CA-CV 07-0459, 2008 WL 4182996, at *3 (Az. Ct. Ap. 2008) (holding "from" field in email acted as signature); *see also* BUS. & COM. ch. 322 table of jurisdictions (identifying Missouri, Montana, and Arizona as states that have adopted the uniform code).

We recognize that the Fort Worth Court of Appeals has reached a holding in conflict with ours. In *Cunningham v. Zurich American Insurance Co.*, the court considered whether the signature line within an email constituted a signature and concluded it did not. 352 S.W.3d 519, 529–30 (Tex. App.—Fort Worth 2011, pet. denied). The court held,

> There is nothing to show that the signature block was typed by Grabouski and not generated automatically by her email client. If Grabouski did personally type the signature block at the bottom of the email, nothing in the email suggests that she did so with the intention that the block be her signature, and Cunningham does not direct us to any other place in the record raising a fact issue about her intention. . . . We decline to hold that the mere sending by Grabouski of an email containing a signature block satisfies the signature requirement when no evidence suggests that the information was typed purposefully rather

11

than generated automatically, [or] that Grabouski intended the typing of her name to be her signature . . . .

*Id.* at 530.

The court offered no explanation for why physically typing in a signature line at the time of drafting the email should be required for a "signature block" to constitute a signature. *See Cox Eng'g, Inc. v. Funston Mach. & Supply Co.*, 749 S.W.2d 508, 511 (Tex. App.—Fort Worth 1988, no writ) (holding letterhead on invoice satisfied signature requirement under Statute of Frauds).

Another court has criticized this holding. *See Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 710–11 (N.D. Tex. 2013). The court observed that signature blocks with a person's name are created by the account owner, not the email client. *Id.* at 710. "There is no fundamental difference between, on the one hand, manually typing a signature block into a series of emails and, on the other, typing the block once and instructing a computer program to append it to future messages." *Id.* at 711.

The court further noted that UETA was designed to remove barriers to electronic transactions by setting an expansive view of what constitutes electronic records and signatures. *Id.* The court recognized that UETA requires the act to be construed and applied consistently with reasonable practices for electronic communications. *Id.* (citing Bus. & Com. § 322.006). "Email communication is a reasonable and legitimate means of reaching a settlement in this day and age." *Id.*

12

We agree. A signature block in an email performs the same authenticating function as a "from" field. Accordingly, it satisfies the requirement of a signature under UETA. *See id.*

We hold that the email name or address in the "from" field satisfies the definition of a signature under existing law. *See Lone Star Air Sys.*, 401 S.W.3d at 859. Accordingly, we hold that the evidence is sufficient to establish that Tomlinson signed the email and that the signed email satisfies the Statute of Frauds.

## B.    Indefiniteness

Tomlinson's other ground for overturning the jury's finding of liability is that the contract was too indefinite to be enforceable. To be enforceable, an agreement must contain all of its essential terms. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 238 (Tex. 2016). We construe the contract as a whole "'to determine what purposes the parties had in mind at the time they signed' it." *Id.* at 239 (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 841 (Tex. 2010)).

"Forfeitures are not favored in Texas, and contracts are construed to avoid them." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). "Thus, if the parties clearly intended to agree and a 'reasonably certain basis for granting a remedy' exists, we will find the contract terms definite enough to provide that remedy." *Fischer*, 479 S.W.3d at 239 (quoting RESTATEMENT

13

(SECOND) OF CONTRACTS § 33 cmt. b (1981)).  "[T]he degree of certainty required may be affected by the dispute which arises and by the remedy sought." RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. b.  "For example, when a suit seeks money damages—rather than specific performance—less certainty is needed to render a contract enforceable."  *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 751 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Somers v. Aranda*, 322 S.W.3d 342, 345 (Tex. App.—El Paso 2010, no pet.)).

Here, the evidence shows that Tomlinson agreed to pay Khoury $400,000 at 7.5% interest over a period of four or five years.  The estimation of payments required under either option establishes that the payments were to have been submitted monthly.  Khoury testified that the parties agreed that Tomlinson would elect whether to pay over a four year period or a five year period.

Tomlinson argued to the trial court that the agreement was indefinite because it did not specify whether the loan would be repaid in four or five years.  Because the parties agreed that Tomlinson would elect which time period he would prefer, this was not a term requiring further negotiation.  *See Fischer*, 479 S.W.3d at 237 (holding leaving material terms open for future agreement means document is not

binding).[4] We hold the contract is sufficiently certain to sustain the jury's finding of liability for breach of contract.

We hold that Tomlinson did not establish that Khoury's breach-of-contract claim failed as a matter of law or was legally insufficient. We sustain Khoury's second issue.

**Attorneys' Fees**

In his third issue, Khoury argues that he is entitled to recover the attorneys' fees that the jury awarded to him. A person may recover his attorneys' fees when he prevails on a breach of contract claim. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2015). In his motion for judgment notwithstanding the verdict, Tomlinson argued that Khoury was "legally precluded from recovering attorneys' fees because he failed to segregate his fees."

"[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). To preserve this issue, however, the complaining party must object to the charge's failure to segregate. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). The charge

---

[4]    To the degree Tomlinson's failure to act on his election created uncertainty in the amount of interest Khoury could have collected, this is irrelevant to our analysis because Khoury did not seek loss of interest as damages at trial. *See Somers v. Aranda*, 322 S.W.3d 342, 345 (Tex. App.—El Paso 2010, no pet.) (holding terms about interest were not material since interest was not awarded in judgment).

question on attorneys' fees did not ask the jury to segregate attorneys' fees. There was no objection to the failure to segregate. Accordingly, this issue has not been preserved. *See id.*

We sustain Khoury's third issue.[5]

## Conclusion

We reverse the trial court's grant of Tomlinson's judgment notwithstanding the verdict for Khoury's breach of contract claim and render judgment conforming to the jury's verdict.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Lloyd.

---

[5] The jury awarded the same amount of damages for all of Khoury's claims. The awards of actual damages for each claim are duplicative. Accordingly, we do not need to reach Khoury's first issue concerning his state securities violation claim because it would not provide him greater relief. *See* TEX. R. APP. P. 47.1; *King v. Deutsche Bank Nat'l Trust Co.*, 472 S.W.3d 848, 856 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Likewise, we do not need to reach Tomlinson's issues on cross-appeal concerning Khoury's common-law fraud claim because our holdings in this opinion fully support the jury's verdict. *See* TEX. R. APP. P. 47.1; *Romero v. Kroger Texas, L.P.*, No. 01-12-00049-CV, 2013 WL 6405477, at *4 (Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.) (mem. op.).

16