# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01109-SCT

*PARISH TRANSPORT LLC AND ERIC PARISH*

*v.*

*JORDAN CARRIERS INC.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2019 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| TRIAL COURT ATTORNEYS: | GRAYSON R. LEWIS |
| | PATRICK H. ZACHARY |
| | VICKI R. LEGGETT |
| | MATTHEW DAVIS SHOEMAKER |
| | MARK D. MORRISON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | KEN R. ADCOCK |
| | MARK D. MORRISON |
| | WILLIAM C. IVISON |
| ATTORNEY FOR APPELLEE: | GRAYSON R. LEWIS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In February 2016, Eric Parish and Parish Transport LLC (Parish Transport) emailed Doug Jordan, the Vice President of Jordan Carriers Inc. (Jordan Carriers), to inquire about purchasing heavy haul equipment from Jordan Carriers. After several email exchanges, on April 12, 2016, Doug Jordan offered to sell the equipment for $1,443,000. On April 20, 2016, at 10:49 a.m., Eric Parish responded, submitting Parish Transport's offer to buy the

equipment for $1,250,000. Later that day, Doug Jordan replied, informing Parish Transport that he needed to discuss the offer and would get back with an answer. Doug Jordan concluded his email with his name and contact information. After discussing the deal with his partner, Doug Jordan replied to Eric Parish's email, stating, "Ok. Let's do it." But this time, Doug Jordan's email concluded with "Sent from my iPhone" instead of his name and contact information. The next day, April 21, 2016, Doug Jordan received a higher bid for the equipment from Lone Star Transportation LLC (Lone Star), which Doug Jordan accepted verbally over the telephone. After receiving a confirmation email from Lone Star, Doug Jordan emailed Parish Transport informing the company that "a contract has already been entered into for the sale of [the equipment]."

¶2.     Parish Transport "filed a complaint for breach of contract and negligent misrepresentation in the Jones County Circuit Court." *Parish Transp. LLC v. Jordan Carriers Inc.*, No. 2019-CA-01109-COA, 2020 WL 5089576, at *1 (Miss. Ct. App. Aug. 25, 2020). The matter was later transferred and consolidated with Jordan Carriers' motion for declaratory judgment in the Adams County Circuit Court. After the cases were consolidated, Jordan Carriers moved for summary judgment, arguing "that it did not have an enforceable contract with Parish [Transport] for the sale of the equipment." *Id.* The circuit court agreed and granted Jordan Carriers' motion for summary judgment.

¶3.     Parish Transport appealed. The Court of Appeals affirmed the trial court's grant of summary judgment because "[w]ithout a signature, an enforceable contract does not exist." *Id.* at *4. The Court of Appeals determined that "[m]erely sending an email does not satisfy

2

the signature requirement" and that "[a]n email that states 'Sent from my iPhone' does not indicate that the sender intended to sign the record." ***Id.***

¶4.    Parish Transport filed a petition for writ of *certiorari*, which we granted. We granted *certiorari* because this case involves an issue of first impression:  this Court has never interpreted or applied Mississippi's Uniform Electronic Transactions Act (UETA). After careful analysis, we find that the UETA permits contracts to be formed by electronic means, *i.e*, emails. We find also that the determination of whether an email is electronically signed pursuant to the UETA is a question of fact that turns on a party's intent to adopt or accept the writing, which is a determination for the fact finder. Because there is a genuine issue of material fact about Doug Jordan's intent, we reverse and remand this case for further proceedings.

## STATEMENT OF THE FACTS

¶5.    In 2016, Doug Jordan, the vice president of Jordan Carriers, was in charge of equipment sales for the company. In February 2016, Eric Parish, the president of Parish Transport, began email correspondence with Doug Jordan about purchasing equipment from Jordan Carriers. After two months of exchanging emails between Eric Parish and Doug Jordan, on April 12, 2016, Doug Jordan sent an email, which was entitled "goldhofer's and prime movers," to Eric Parish that listed the total price of the equipment that Parish had been interested in as $1,443,000. This email concluded with:

> Doug Jordan
> Jordan Carriers
> Jordan Heavy Haul
> Jordan Logistics

The email included Doug Jordan's telephone number and Jordan Carriers' logo. On April 20, 2016, at 10:49 a.m., Eric Parish replied to Doug Jordan's email and made Parish Transport's "formal offer in writing" to purchase the equipment for $1,250,000. At 1:21 p.m., Doug Jordan replied and informed Eric Parish that

> I will be getting back with you today. Going to talk to my brother about this.
> Got to talk to my partner before we take a mule kick in the nuts on this deal.
> I'm sure we will finalize today. He just got back in from a trip.

This email concluded with the same typed information as Doug Jordan's previous email. At 1:25 p.m., Eric Parish replied in the same email chain, stating, "[n]o rush just wanted you to have it in writing so you know that I am serious about this deal and my offer." Eric Parish stated also that he was "flying out tomorrow" and that they would "have to get this deal closed out pretty quickly once we pull the trigger."

> At 3:00 p.m., Doug Jordan responded with the following email:

> Ok. Let's do it. I need to get my people in touch with your people. Do you
> have a preference on how the money is spread out on the equipment?

> Sent from my iPhone

Four minutes later, Eric Parish responded, "[y]es" and itemized how Parish Transport wished to apply the money. Eric Parish concluded the email by asking Doug Jordan whether the money allocation was okay. At 3:37 p.m., Doug Jordan responded in the affirmative. Again, Doug Jordan's email concluded with "[s]ent from my iPhone[.]" Immediately after receipt of the email, Eric Parish replied, asking:

> I will have my controller contact you or who do you want him to call? We will
> get the ball bouncing?

4

At 3:40 p.m., Doug Jordan directed Eric Parish to call Lynda Holland Ham[1] and concluded the email with "[s]ent from my iPhone[.]"

¶6.     On April 21, 2016, Tex Robbins of Lone Star and Doug Jordan agreed verbally over the telephone that Lone Star would "purchase the same equipment plus additional equipment for more money than [Parish Transport]." ***Parish Transp.***, 2020 WL 5089576, at *2. The next day, April 22, 2016, at 9:52 a.m., Tex Robbins sent Doug Jordan an email stating:

> Per our conversation last night, Lone Star agrees to pay . . . [for] the attached list of equipment. We will need to coordinate a site visit early next week, if possible, to complete a full inventory of the equipment attached and miscellaneous components discussed.
>
> Please let me know who my CFO . . . will need to coordinate with regarding execution of the Bill of Sale and wire instructions.

Prior to Tex Robbins's email, Eric Parish sent a text message to Doug Jordan at 9:29 a.m., stating, "We have tried calling Lynda yesterday and today with no luck. Is she out?" ***Id.*** (internal quotation marks omitted). "The record does not indicate that Doug [Jordan] responded at this time." ***Id.***

¶7.     Three hours and ten minutes later, at 12:39 p.m., Doug Jordan emailed Eric Parish in a new email chain entitled "sale" and stated:

> Sorry I did not get back with you yesterday, but I got with my people and a contract has already been entered into for the sale of all the Goldhoffer equipment. I hate that I cannot continue this deal with you but if something were to fall through you will be the first to know.
>
> Thanks,
>
> Doug Jordan

---

[1]The record does not inform us of her position at Jordan Carriers.

> Jordan Carriers
> Jordan Heavy Haul
> Jordan Logistics

At 3:25, Eric Parish responded:

> It is Parish Transport's full understanding that we have a binding and enforceable agreement for the purchase of [the equipment]. We sent a formal offer to you by email on April 20, 2016 at 10:49 a.m. On April 20, 2016 at 3:00 p.m. you agreed to accept the offer we placed. Parish Transport has put forth financial expenditures based upon this agreement as well entering into transportation agreements with our customers utilizing this equipment. Parish Transport stands to incur substantial losses if Jordan Carriers/Jordan Heavy Haul does not uphold the agreement.
>
> We request that you honor the agreement at hand or we will be forced to retain an attorney to pursue Jordan Carriers/Jordan Heavy Haul for damages. Please advise if Jordan Carriers/ Jordan Heavy Haul will proceed with this agreement with Parish Transport.

*Id.* at *2 (alteration in original).

¶8.   "According to Jordan [Carriers], on May 2, 2016, Parish [Transport] filed a complaint against Jordan [Carriers] in the Hinds County Chancery Court requesting specific performance of their alleged contract and a temporary restraining order precluding Jordan [Carriers] from selling the equipment to Lone Star." *Id.* The complaint ultimately was dismissed by Parish Transport. *Id.*

¶9.   On May 13, 2016, Jordan Carriers filed an action for declaratory judgment in the Adams County Circuit Court, seeking a declaration on whether there was a valid contract between Jordan Carriers and Parish Transport. *Id.*

¶10.   On June 21, 2016, Parish filed a complaint for breach of contract and for negligent misrepresentation against Jordan Carriers in the Circuit Court of the First Judicial District

6

of Jones County. *Id.* In response, Jordan Carriers filed a motion to dismiss or, in the alternative, to transfer venue to Adams County. *Id.* at *3. On November 3, 2016, the Jones County circuit judge denied Jordan Carriers' motion to dismiss, but granted its request to transfer venue to Adams County. *Id.* The two cases were consolidated in Adams County on July 18, 2017.

¶11. On September 6, 2018, Jordan Carriers moved for summary judgment, "arguing that the emails between the parties did not satisfy the statute of frauds." *Id.* A hearing regarding Jordan Carriers' motion for summary judgment was held on June 6, 2019. After the hearing, the trial judge concluded that there was no valid contract between the parties and granted Jordan Carriers' motion for summary judgment. In her final judgment, the judge determined that "the emails between the parties do not constitute a valid, binding, written contract signed by Jordan Carriers, Inc. or Doug Jordan as the party against whom enforcement is sought pursuant to Mississippi law and the Statute of Frauds."

¶12. Parish Transport appealed, claiming "that it had an enforceable contract with Jordan [Carriers] and that the court erred by granting summary judgment." *Id.* at *1. On appeal, Parish Transport argued that the emails between Eric Parish and Doug Jordan constituted a valid contract pursuant to the UETA and the statute of frauds because "the series of integrated emails constitute a 'writing' of the contract at issue that, when taken together, is electronically signed by Jordan with the intent to sign and adopt the record." In response, Jordan Carriers argued that "[t]he only substantive emails which could have been an acceptance of a contract were followed by 'sent from my iphone' and did not include [Doug

7

Jordan's] name, much less anything he inserted or attached to be a signature."

¶13.   The Court of Appeals determined that

> Merely sending an email does not satisfy the signature requirement. The email sent by Doug at 3:00 p.m. stating, "Ok. Let's do it. . . ." did not contain a signature. As discussed, an electronic signature is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Miss. Code Ann. § 75-12-3(8). An email that states "Sent from my iPhone" does not indicate that the sender intended to sign the record.

*Id.* at *4. The Court of Appeals determined also that the email was ambiguous and that, based on Doug Jordan's deposition testimony, "Ok. Let's do it," meant "[l]et's get a deal done." *Id.* (internal quotation marks omitted).

¶14.   On December 8, 2020, Parish Transport filed a petition for a writ of *certiorari*, which this Court granted. Parish Transport argues that "the Court of Appeals erroneously interpreted and misconstrued Mississippi's UETA statutes with respect to determining what constitutes an 'electronic signature' by Doug Jordan with the email chain, as necessary to form a contract by email in compliance with the Uniform Commercial Code (U.C.C.) Article 2 statute of frauds." Specifically, Parish Transport argues that the Court of Appeals (1) "misapplied [the] UETA's expansive definition of an 'electronic signature,' which is met by Doug [Jordan's] name/business email address in the 'From' field of the email header" and (2) "misapprehended Mississippi law and failed to consider the integrated email chain as a whole, which incorporated other emails with Doug [Jordan's] Desktop signature that also qualifies as an 'electronic signature' under the UETA."

8

## STANDARD OF REVIEW

¶15. "This Court employs a *de novo* standard of review when considering a trial court's grant or denial of summary judgment." *Hobson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1033 (Miss. 2015) (citing *WW, Inc. v. Rainbow Casino-Vicksburg P'ship, L.P.*, 68 So. 3d 1290, 1292 (Miss. 2011)). "Motions for summary judgment must be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *WW, Inc.*, 68 So. 3d at 1292). "The movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact." *Webb v. Braswell*, 930 So. 2d 387, 395 (Miss. 2006) (citing *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996)). "We are to view the evidence in the light most favorable to the party opposing the motion." *Id.* (citing *Stallworth v. Sanford*, 921 So. 2d 340, 341-42 (Miss. 2006)). "If any triable issues of fact exist, the trial court's grant of a summary judgment will be reversed; otherwise the decision will be affirmed." *Watts v. Tsang*, 828 So. 2d 785, 791 (Miss. 2002) (internal quotation mark omitted) (quoting *Conley v. Warren*, 797 So. 2d 881, 882 (Miss. 2001)).

¶16. Additionally, "[m]atters of statutory interpretation also are reviewed by this Court using a de novo standard." *Chandler v. McKee*, 202 So. 3d 1269, 1271 (Miss. 2016) (citing *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1206 (Miss. 2002)).

9

I. **Applicability of the UETA**

¶17.    Parish Transport argues that under the UETA, the email chain between Eric Parish and Doug Jordan constitutes a signed, written contract that satisfies the statute of frauds. First, we must decide whether the UETA applies.

¶18.    Mississippi has adopted the UETA. *See* Miss. Code Ann. §§ 75-12-1 to -39 (Rev. 2016). The UETA applies "to electronic records and electronic signatures relating to a transaction[,]" including transactions governed by Article 2 of the Uniform Commercial Code (Mississippi Code Section 75-2-101 to -725 (Rev. 2016)). Miss. Code Ann. § 75-12-5(a)(2) (Rev. 2016). The UETA states also that it "applies only to transactions between parties each of which has agreed to conduct transactions by electronic means." Miss. Code Ann. § 75-12-9(b) (Rev. 2016). During his deposition, Doug Jordan admitted that using emails and text messages to correspond with potential customers were normal, standard business operating procedures at Jordan Carriers.

¶19.    Additionally, "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including parties' conduct." Miss. Code Ann. § 75-12-9(b). The email correspondence between Doug Jordan and Eric Parish regarding the sale and purchase of the equipment spanned more than two months. Doug Jordan's deposition testimony and the continuous email exchange between both parties illustrate an agreement between the parties to conduct the sale of the equipment by electronic means. *See **Dalos v. Novaheadinc***, No. 1 CA-CV 07-0459, 2008 WL 4182996, at *4 (Ariz.

Ct. App. Mar. 18, 2008) ("A person may be deemed to have consented to electronic communications by on-going participation in such communications, *Int'l Casings* [*Grp., Inc. v. Premium Standard Farms, Inc.*], 358 F. Supp. 2d [863,] 875 [(W.D. Mo. 2005)], or by primary use of that medium. *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 653 (Mo. Ct. App. 2006).").[2] The UETA applies in this case. Now, we must decide whether the UETA permits an email to be a writing that satisfies the statute of frauds.

¶20.     Under the UETA, "[e]lectronic record" means "a record created, generated, sent, communicated, received, or stored by electronic means." Miss. Code Ann. § 75-12-3(7) (Rev. 2016) (internal quotation marks omitted). An email satisfies the definition of an electronic record. The UETA is to be "construed and applied":

> (1) To facilitate electronic transactions consistent with other applicable law;
>
> (2) To be consistent with reasonable practices concerning electronic transactions and with the continued expansion of those practices; and
>
> (3) To effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.

Miss. Code Ann. § 75-12-11 (Rev. 2016).

¶21.     Pursuant to the statute of frauds:

> [A] contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

---

[2]Because this is a first impression case in Mississippi, we turn to an examination of authorities from other United States jurisdictions. *See Graceland Care Ctr. of New Albany, LLC v. Hamlet ex rel. Kinard*, 236 So. 3d 1, 6 (Miss. 2017) ("Although this is an issue of first impression, we are able to look to other courts for guidance on this issue.")

11

Miss. Code Ann. § 75-2-201(1) (Miss. 2016). "A writing must meet three requirements to satisfy the statute of frauds: 1) the writing must be 'sufficient to indicate that a contract for sale has been made between the parties,' 2) the writing must be 'signed by the party against whom enforcement is sought,' and 3) the writing must specify a quantity." ***Migerobe, Inc. v. Certina USA, Inc.***, 924 F.2d 1330, 1333 (5th Cir. 1991) (quoting Miss. Code Ann. § 75-2-201 (1972)); *see also **Derden v. Morris***, 247 So. 2d 838, 839 (Miss. 1971). If the law requires a record to be in writing or if it requires a signature, the UETA allows an electronic record or signature to satisfy the law. Miss. Code Ann. § 75-12-13(c)-(d) (Rev. 2016). Thus, if an email meets the three requirements needed to qualify as a writing pursuant to the statute of frauds, then the email can satisfy the statute of frauds regardless of its being in electronic form. Miss. Code Ann. § 75-12-13(a) (Rev. 2016) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

¶22.   To clarify, we hold that an email correspondence between two parties regarding the sale of goods can be a valid written contract under the statute of frauds. Miss Code Ann. § 75-12-13(b) (Rev. 2016) ("A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation."); *see also **Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.***, 622 F.3d 384, 391 (5th Cir. 2010) ("Emails can qualify as the signed writings needed to form contracts." (citing La. Rev. Stat. Ann. § 9:2607 (West, Westlaw current through 2020 2d Extraordinary Sess.))).

## II.   What is a valid signature under the UETA?

¶23.   The statute of frauds requires also that the writing be signed by the party against

whom enforcement is sought. Miss. Code Ann. § 75-2-201(1). "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form." Miss. Code Ann. § 75-12-13(a). The UETA defines "[e]lectronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Miss. Code Ann. § 75-12-3(8) (Rev. 2016) (internal quotation marks omitted). But the UETA does not define the term "sign." *See Khoury v. Tomlinson*, 518 S.W.3d 568, 576 (Tex. App. 2017).

¶24. The comments to the federal Uniform Electronic Transactions Act, while not binding on this Court, provide guidance regarding what constitutes an electronic signature:

> The idea of a signature is broad and not specifically defined. Whether any particular record is "signed" is a question of fact. Proof of that fact must be made under other applicable law. This Act simply assures that the signature may be accomplished through electronic means. No specific technology need be used in order to create a valid signature. . . . It also may be shown that the requisite intent was not present and accordingly the symbol, sound or process did not amount to a signature. One may use a digital signature with the requisite intention, or one may use the private key solely as an access device with no intention to sign, or otherwise accomplish a legally binding act. In any case the critical element is the intention to execute or adopt the sound or symbol or process for the purpose of signing the related record.

Unif. Elecs. Transactions Act § 2 cmt. (Nat'l Conf. of Comm'rs on Unif. State L. 1999), https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?Docum entFileKey=2c38eebd-69af-aafc-ddc3-b3d292bf805a&forceDialog=0.

¶25. "In a case of first impression Mississippi Courts look to other jurisdictions in determining the matter." *Forrest Gen. Hosp. v. Upton*, 240 So. 3d 410, 418 (Miss. 2018) (internal quotation marks omitted) (quoting *Sheppard v. Miss. State Highway Patrol*, 693

13

So. 2d 1326, 1329 (Miss. 1997)). Other jurisdictions have recognized that typed names on an email constitute an electronic signature under their state's UETA. *See **Williamson v. Delsener***, 874 N.Y.S. 2d 41, 41 (N.Y. App. Div. 2009); ***Waddle v. Elrod***, 367 S.W.3d 217, 228-29 (Tenn. 2012); ***Tricon Energy, Ltd. v. Vinmar Intern., Ltd.***, No. 4:10-CV-05260, 2011 WL 4424802, at *11 (S.D. Tex. Sept. 21, 2011); ***Cloud Corp. v. Hasbro, Inc.***, 314 F.3d 289, 296 (7th Cir. 2002). In ***Williamson v. Bank of New York Mellon***, the United States District Court recognized that "a signature block at the bottom of an email has come to represent what a handwritten signature once represented: a means of identifying the sender, signaling that he or she adopts or stands behind the contents of the communication, and a method of ensuring that the communication is authentic." ***Williamson v. Bank of New York Mellon***, 947 F. Supp. 2d 704, 711 (N.D. Tex. 2013).

¶26.    Additionally, the comments to the federal UETA provide that an electronic signature is attributable to a person when:

> A. The person types his/her name as part of an e-mail purchase order;
>
> B. The person's employee, pursuant to authority, types the person's name as part of an e-mail purchase order;
>
> C. The person's computer, programmed to order goods upon receipt of inventory information within particular parameters, issues a purchase order which includes the person's name, or other identifying information, as part of the order.

Unif. Elecs. Transactions Act § 9 cmt. (Nat'l Conf. of Comm'rs on Unif. State L. 1999), https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=2c38eebd-69af-aafc-ddc3-b3d292bf805a&forceDialog=0.

14

¶27.    Mississippi Code Section 75-12-11(1) provides that the UETA is to be construed "[t]o facilitate electronic transactions consistent with other applicable law[.]" Miss. Code Ann. § 75-12-11(1). Therefore, we must look to the U.C.C.'s definition of "Signed," which is defined as "using any symbol executed or adopted with present intention to adopt or accept a writing." Miss. Code Ann. § 75-1-201 (Rev. 2016) (internal quotation marks omitted). We hold that, under the UETA, a contract has a valid electronic signature when:  1) any sound, symbol, or process was executed or adopted with the present intention to adopt or accept the electronic record; and 2) that sound, symbol, or process is attached to or logically associated with the record.

¶28.    The Court of Appeals determined that "[a]n email that states 'Sent from my iPhone' does not indicate that the sender intended to sign the record." **Parish Transp.**, 2020 WL 5089576, at *4. But the validity of an electronic signature is dependent upon whether the writing was adopted by the party with the present intention to adopt or accept it. The "Sent from my iPhone" closing is an automated signature block that is the default setting on every iPhone.[3] Although it is an automatic signature block, a preponderance of relevant evidence may satisfy a trier of fact that the user had the requisite intent to adopt the closing as his or her signature for mobile emails. The comments for the federal UETA explain that "so long as the electronic record or electronic signature resulted from a person's action it will be attributed to that person . . . . [Additionally,] [a] person's actions include actions taken by

_____

[3]A user can edit this closing by deleting it in whole or in part, or by customizing it with words, with one or more symbols, or by any other means that the owner or user of the device may employ to represent his or her signature.

15

human agents of the person, as well as actions taken by an electronic agent, i.e., the tool, of the person." Unif. Elecs. Transactions Act § 9 cmt.

¶29.    The federal district court in **Williamson** considered also the applicability of automatically attached signature blocks under Texas's UETA. **Williamson**, 947 F. Supp. 2d at 710-11. The district court determined that "[t]here is no fundamental difference between, on one hand, manually typing a signature block into a series of emails and, on the other, typing the block once and instructing a computer program to append it to future messages." *Id.* at 711. We agree, as long as the requisite intent to adopt or accept the writing is present.[4]

¶30.    This Court has held that "[w]hether a contract exists involves both questions of fact and questions of law." *Jackson HMA, LLC v. Morales*, 130 So. 3d 493, 497-98 (Miss. 2013) (internal quotation marks omitted) (quoting *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 458 (5th Cir. 1995)). But "where the existence of a contract turns on consideration of conflicting evidence, that presents a 'question of fact properly presented to, and determined by, the jury.'" *Id.* at 498 (quoting *Ham Marine*, 72 F.3d at 461). Specifically, "[t]he question of law/question of fact dichotomy requires a two-step inquiry in contract law." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (Miss. 2003) (citing *Neider v. Franklin*, 844 So. 2d 433, 436 (Miss. 2003)). "Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Id.* at 752 (citing *Parkerson v. Smith*, 817

---

[4]Most automatic signature blocks require the account user to take some step to set up the signature, which we find could be relevant evidence to a trier of fact that could be indicative of the user's intent to adopt the automatic signature block. *See Williamson*, 947 F. Supp. 2d at 710-11; *see also* Unif. Elecs. Transactions Act § 9 cmt.

So. 2d 529, 532 (Miss. 2002)). "In the event of an ambiguity, the subsequent interpretation presents a question of fact for the jury which we review under a substantial evidence/manifest error standard." *Id.* (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So. 2d 779, 781 (Miss. 1998)). "If the terms of a contract are subject to more than one reasonable interpretation, it is a question properly submitted to the jury." *Id.* (citing *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077, 1087 (Miss. 2000)). We hold that the question of whether there is a valid electronic signature is dependent upon the person's intent when he or she executed the writing, which is a question of fact.

### III.    Was there a valid electronic signature in this case?

¶31.    Parish Transport argues that there are two electronic symbols that qualify as electronic signatures: "(1) the sender's name and email address in the 'from' field of the email header, and (2) the automatic signature block at the end of an email."

### A.    The sender's name and email address in the "from" field of an email are not electronic signatures.

¶32.    Parish Transport argues that "[t]he name and email address in the 'from' field is an electronic symbol affixed to the email that serves to authenticate and verify the content of the email to be by its sender [Doug Jordan], and thus is sufficient to constitute an 'electronic signature' under the UETA." Specifically, Parish Transport argues that "Doug [Jordan's] deposition testimony establishes that he wrote and sent the emails from his business email address (including the email of acceptance sent from his iPhone), and as such the corresponding 'from' field in the email header was thereby affixed with Jordan's intent to sign/authenticate the writing in the email to be by the sender."

17

¶33. Parish Transport relies on a case from Texas, *Khoury*. Similar to the instant case, *Khoury* involved whether a contract that was formed via an exchange of emails satisfied the statute of frauds. *Khoury*, 518 S.W. 3d at 573-74. The appellee, Tomlinson, "acknowledged his email constituted a writing but argued that the email was not signed." *Id.* at 573. "The email show[ed] that Tomlinson's name [did] not appear in the body of the email that he wrote." *Id.* at 575. But Tomlinson's name and email address did appear in the "from" field of the email. *Id.* The Texas court was challenged with determining "whether the name or email address in the 'from' field constitut[ed] a signature for purposes of the Statute of Frauds." *Id.* at 575. In interpreting the Texas Uniform Electronic Transactions Act, the court "look[ed] to existing law to determine the meaning and effect of 'sign.'" *Id.* at 576. Under Texas law, "[w]hat is essential [for a signature under the Statute of Frauds] is that the signature of the party to be charged shall authenticate the whole of the writing." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Gruss v. Cummins*, 329 S.W.2d 496, 500 (Tex. Civ. App. 1959)). Tomlinson argued that the "UETA requires an 'intent to sign the record'" and "that the intent requirement was not satisfied because . . . there [was] proof in the record that the parties did not intend to be bound by the email." *Id.* at 578. The court disagreed and determined that

> The statute does not require an intent to be *bound*, however. It requires an intent to sign. We have held that signing the document is an act of authenticating the document. The question is, then, whether the party attached a symbol with an intent to authenticate the document.

*Id.* at 578-79 (citations omitted). Therefore, the court concluded that "[t]he 'from' field in the email authenticated the writing in the email to be Tomlinson's," *id.* at 576, and "the

18

signed email satisfi[ed] the Statute of Frauds." *Id.* at 579.

¶34.    We find that ***Khoury*** is distinguishable. In Texas, "sign" requires an "intent to authenticate." *Id.* at 576-78. But in Mississippi, we require a different level of intent. Our law requires some form of execution that signifies an intent to accept or adopt the writing. *See* Miss. Code Ann. § 75-1-201(37). The comment to Section 75-1-201, Mississippi's Uniform Commercial Code, expounds as follows:

> Derived from former Section 1-201. Former Section 1-201 referred to "intention to authenticate"; because other articles now use the term "authenticate," the language has been changed to "intention to adopt or accept." The latter formulation is derived from the definition of "authenticate" in Section 9-102(a)(7).

Miss. Code Ann. § 75-1-201 cmt. 37 (West, Westlaw through 2021 Reg. Sess.). Code Section 75-9-102(a)(7) defines "[a]uthenticate" to mean "(A) [t]o sign; or (B) [w]ith present intent to adopt or accept a record, to attach to or logically associate with the record an electronic sound, symbol or process." Miss. Code Ann. § 75-9-102(a)(7) (Rev. 2016) (internal quotation marks omitted). Thus, the term "authenticate" still requires an intent to adopt or accept the writing.

¶35.    Mississippi's Uniform Commercial Code comment explains also that,

> as the term "signed" is used in the Uniform Commercial Code, a complete signature is not necessary. The symbol may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible situations can be complete and the court must use common sense and commercial experience in passing upon these matters. *The question always is whether the symbol was executed or adopted by the party with present intention to adopt or accept the writing.*

Miss. Code Ann. § 75-1-201 cmt. 37 (emphasis added).

19

¶36. Merely sending an email from one's email account is not enough to show an intent to enter into a contract. Parish Transport argues that a contrary finding undermines the UETA's purpose and that "contracts [could] be easily backed out of by simply sending emails from an iPhone or without a signature block." We disagree. We decline to follow **Khoury** and other jurisdictions that have found that the "from" field alone is a valid electronic signature under the UETA. *See* **Khoury**, 518 S.W.3d at 568; **Int'l Casings Grp., Inc.**, 358 F. Supp. 2d 863; **Kluver v. PPL Montana, LLC**, 293 P.3d 817 (Mont. 2012); **Dalos**, 2008 WL 4182996, at *4; **Nesbitt v. City of Bullhead City**, No. CV-18-08354-PCT-DJH, 2020 WL 6262396, slip op. at *4 (D. Ariz. Oct. 23, 2020).

### B. An email chain can be construed together to constitute the entirety of a writing. Therefore, an earlier electronic signature may satisfy the statute of frauds signature requirement.

¶37. Parish Transport asserts that the Court of Appeals misapprehended Mississippi law by failing to recognize that several writings or emails can be integrated and construed together as a whole to satisfy the signature requirement of the statute of frauds. Parish Transport argues that the email chain between Eric Parish and Doug Jordan "is a series of integrated emails that constitute the 'writing' of the contract at issue and that when considered together the writing is electronically signed by Doug [Jordan] on behalf of Jordan [Carriers]."

¶38. "A 'writing' for purposes of the statute of frauds may consist of separate writings, connected together by express reference to each other or internal evidence of their unity, relation, or connection; by so connecting the writings, otherwise separate documents may

20

incorporate by reference the terms of each document." ***Hunt Oil Co. v. F.E.R.C.***, 853 F.2d 1226, 1241 (5th Cir. 1988) (citing ***Affiliated Invs., Inc. v. Turner***, 337 So. 2d 1263 (Miss. 1976); ***Ludke Elec. Co. v. Vicksburg Towing Co.***, 240 Miss. 495, 127 So. 2d 851 (1961)). But "[t]he signed memorandum must . . . refer to the unsigned writing either expressly or by internal evidence of subject matter and occasion under such circumstances as to clearly show that the unsigned writing is necessarily incorporated into the signed memorandum." ***Ludke***, 127 So. 2d at 854 (citing 49 Am. Jur. *Statute of Frauds* § 394; ***Borden v. Case***, 118 So. 2d 751 (Ala. 1960)). Additionally, this Court has held:

> The true rule, however, imposes the condition that the signed writing must have been with at least an implied reference to the writing which it is sought to incorporate in the memorandum; otherwise, the signature on the one instrument cannot be regarded as authenticating the other writing. Therefore, it would seem that in order for an unsigned writing not referred to expressly in a signed writing to be deemed incorporated in the signed writing, it should appear that the signed writing is based in part, at least, upon the unsigned writing.

***Id.*** (quoting 49 Am. Jur. *Statute of Frauds* § 394). Therefore, we find that in some instances an entire email chain, *i.e.*, separate writings, can be combined and considered one signed writing. If the email chain concerns the same subject matter throughout and the signed email is so closely related to the unsigned email, then the email chain can be combined as a whole writing. But if the email chain concerns several subject matters and if the signed email is too distant from the unsigned email, then the two cannot be combined. For example, if two parties are negotiating in a single email chain that spans more than fifty emails and the only signature attributable to the buyer is contained on the first email, it is hard to imagine that the buyer intended for that signature to adopt every term from the first email to the last.

21

¶39.   In this case, the "signed" email that Parish Transport claims satisfies the statute of frauds is Doug Jordan's email sent at 1:21 p.m. on April 20, 2016, in response to Eric Parish's formal offer to purchase the equipment. Doug Jordan stated in this email that he needed to discuss the offer with his partner and that he would get back with him that same day. The email concluded with Doug Jordan's phone number and the following:

> Doug Jordan
> Jordan Carriers
> Jordan Heavy Haul
> Jordan Logistics

The unsigned writing that Parish Transport claims should be integrated with the signed writing is Doug Jordan's email sent the same day at 3:00 p.m., in the same email chain, in which he states, "Ok. Let's do it . . . . Sent from my iPhone."

¶40.   Comparing both emails, it is clear there is only one subject matter, *i.e.*, the sale of the equipment. The emails were sent approximately an hour and thirty-nine minutes apart. Doug Jordan's second email impliedly refers back to his first email. We find that the two emails can be combined into one contractual writing. Here, Doug Jordan's email that concluded with his name should be construed as a signed writing because his typed name is an electronic signature pursuant to the UETA. But there is a question about whether Doug Jordan intended for that signature block to adopt that single email's written content or whether he intended for the signature block to adopt the entire email chain writing as a whole. Again, whether the writing is signed with the requisite intent is a question of fact for the fact finder. Therefore, we find that, even though individual emails in an email chain can be combined to satisfy the statute of frauds signature requirement, the question remains whether the party intended the

22

symbol to adopt or accept the writing when it was executed.

¶41. The record is silent regarding whether Doug Jordan intended to adopt the entire email chain as a whole. The record is silent also regarding whether Doug Jordan intended to adopt "Sent from my iPhone" as a symbol to sign contracts via his mobile device. Without more, we cannot say whether Doug Jordan did or did not intend to adopt the email chain as a valid contract. His intent is a question of fact. Thus, a genuine issue of material fact exists, and summary judgment should not have been granted.

## CONCLUSION

¶42. The trial court erred by granting Jordan Carriers' motion for summary judgment. Viewing the evidence in the light most favorable to Parish Transport, a genuine issue of material fact remains regarding Doug Jordan's intent. Accordingly, we reverse the judgments of the Court of Appeals and the trial court, and we remand this case for a fact finder to make a determination about Doug Jordan's intent.

¶43. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

23